Deanna BARRETT, Appellant,

v.

OMAHA NATIONAL BANK, Appellee.

No. 83–1990.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 16, 1983.

Decided Feb. 3, 1984.

---

1. The Honorable Harry H. MacLaughlin presided.

Jerold V. Fennell of Robert E. O'Connor & Associates, Omaha, Neb., for appellant.

George C. Rozmarin, Thomas C. Lauritsen, Swarr, May, Smith & Andersen, Omaha, Neb., for appellee.

Before LAY, Chief Judge, BRIGHT, Circuit Judge, and HANSON [*], Senior District Judge.

BRIGHT, Circuit Judge.

Deanna Barrett brought an action against her former employer, Omaha National Bank (ONB), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging sexual harassment, retaliation, and constructive discharge. Following a trial, the district court[1] dismissed her complaint. Barrett appeals. We affirm.

On appeal, Barrett argues that the district court erred in its finding that the action ONB took to prevent a co-employee from further harassing her was appropriate. Barrett also contends that the district court erred in concluding that she failed to state a retaliation claim cognizable under 42 U.S.C. § 2000e–3(a) and, in the alternative, that the alleged retaliatory acts were not causally connected to Barrett's complaint of sexual harassment. Finally, with respect to her constructive discharge claim, Barrett argues that the district court erroneously concluded that she did not prove that ONB intended to force her resignation.

I. *Background.*

In January 1979, ONB employed Deanna Barrett as a personal banker at its main banking facility. She worked at a desk, one of fifteen, in an area commonly known as the "fishbowl," an open, public area on the Bank's main floor where teller transactions were conducted and consumer loans handled. Timothy Day, another personal banker, worked at a desk approximately fifteen feet from Barrett's desk.

On January 17, 1979, Barrett, Day, and William Legenza, an assistant manager of one of ONB's branch locations, drove to Grand Island, Nebraska to attend a loan seminar. Barrett claims that, on the way to and during the two-day conference, Day talked about sexual activity and touched her in an offensive manner.

Upon returning to Omaha, Barrett informed Thomas Cooper, the vice president in charge of Personal Banking Services, of the misconduct. ONB investigated the charges, determined that Day and Legenza had engaged in inappropriate conduct, and took disciplinary measures. Day was reprimanded for his "grossly inappropriate" conduct, placed on probation for ninety days, and warned that any further misconduct would result in discharge. Legenza was reprimanded for his failure to intervene on Barrett's behalf. On Friday, January 26, Barrett learned of the disciplinary measures taken.

During February of 1979, James O'Gara, second vice president in charge of the Personal Banking Department, informed Barrett that she was going to participate in a stressful work measurement program. This program involved a work measurement specialist sitting next to the employee during the entire workday and measuring with a stop watch every work activity he or she performed. O'Gara claims that Barrett was selected for participation in this program and informed of her selection in December of 1978. Barrett alleges that she first learned that she was to participate in February of 1979. When Barrett advised O'Gara that she was already under a great deal of stress, he suggested that she try to participate, but told her to let him know if it became "too unbearable."

Also in February, O'Gara reviewed nine or ten loans Barrett had made that were previously approved by her superiors, asking Barrett to explain the basis upon which she had made the loans. Barrett and Mary Jochim, a former ONB employee, testified

---

[*] The Honorable WILLIAM C. HANSON, United States Senior District Judge for the Northern and Southern Districts of Iowa.

[1] The Honorable C. Arlen Beam, United States District Judge for the District of Nebraska.

that such a review was highly unusual. O'Gara denied that there was anything unusual about the loan review.

On February 22, 1979, Barrett left ONB claiming she was ill. After she used up her accrued sick leave and vacation time, she quit. She told Cooper that she was having physical problems and that she wanted to spend more time with her daughter.

In July of 1979, Barrett filed charges of sexual harassment with the Nebraska Equal Opportunity Commission and the Equal Employment Opportunity Commission. Upon receiving her "right-to-sue" letter from the EEOC, Barrett brought this action in district court against ONB alleging 1) that she was sexually harassed by Day and Legenza, and that ONB failed to take appropriate corrective action, 2) that, because she opposed the sexual harassment, ONB took retaliatory actions against her, and 3) that she was forced to resign to escape these intolerable conditions.

II. *Discussion.*

A. *Sexual Harassment.*

■ Sexual harassment by a co-employee is not a violation of Title VII unless the employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action. *Katz v. Dole,* 709 F.2d 251, 255 (4th Cir.1983) (citing 29 C.F.R. § 1604.11). In this case, the district court found that ONB took appropriate action to prevent Day from further harassing Barrett. The Federal Rules of Civil Procedure require us to accept this finding unless it is clearly erroneous. Fed. R.Civ.P. 52(a). A finding of fact is clearly erroneous if, upon reviewing the entire record, we are left with the definite and firm conviction that a mistake has been made. *Peterson v. United States,* 673 F.2d 237, 239 (8th Cir.1982). This record leaves us with no such conviction; ample evidence exists to support the district court's conclusion that ONB took immediate and appropriate corrective action.

■ Barrett complains that ONB's investigation was "totally superficial." Barrett relies on evidence that Marc Ford, who was temporarily in charge of the Personnel Department when the incident arose, interrogated her and yet did not even talk with Day and Legenza. The record indicates, however, that both vice president Cooper and Donald Adams, the Director of the Personnel Department, interviewed Day and Legenza, and that all the bank officials involved in the investigation shared the information that they had accumulated before reaching any conclusion. Barrett suggests that ONB was simply concerned with absolving itself, rather than determining what really happened in Grand Island. The record reveals, however, that ONB conducted a full investigation to determine what happened. Bank officials interviewed Barrett, who made serious allegations of misconduct. They interviewed Day and Legenza, who categorically denied any wrongdoing. They interviewed ONB employees James Allen and Gene Selk, who were also at the Grand Island seminar and therefore potential witnesses to the alleged misconduct. The investigation on which ONB relied in drawing its conclusions and taking action disclosed accounts of the events that conflicted in material respects. Barrett's claims of an inadequate and improper investigation derives no substantial support from the record.

■ Barrett also argues that ONB took absolutely no action to ensure that her working environment would be free of future hostility. We disagree. The law does not require ONB to fire Day and Legenza. ONB must simply take "prompt remedial action reasonably calculated to end the harassment." *Katz v. Dole, supra,* 709 F.2d at 256. In this case, within four days of Barrett's complaint, ONB officials informed Day and Legenza that their conduct would not be tolerated, and told Day that he would be fired for any further misconduct. The district court did not err when it concluded that ONB took immediate and appropriate corrective action.

B. *Retaliation.*

■ Barrett alleged that ONB discriminated against her in violation of 42 U.S.C. § 2000e–3(a) by making the condi-

tions of her employment more onerous because she complained of the sexual harassment by her co-employees.[2] 42 U.S.C. § 2000e–3(a) provides, in part:

(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees * * * because [s]he has opposed any practice made an unlawful employment practice by this subchapter * * *.

The district court found that Barrett failed to state a claim cognizable under section 2000e–3(a) because her complaint was not in opposition to an unlawful employment practice. The district court correctly observed that sexual harassment by a co-employee does not in itself constitute an unlawful employment practice. Sexual harassment by a co-employee does not become a Title VII violation unless the employer knows or should know of the harassment and fails to take immediate and appropriate corrective action. Implicit in the employer's duty to take corrective action, however, is the employee's right to complain of sexual harassment by a co-employee without fear of retaliation. Assuming arguendo that Barrett states a Title VII claim for retaliatory conduct under either section 2000e–3(a) (retaliation) or section 2000e–2 (sex discrimination), her claim nevertheless fails because the record adequately supports the district court's alternative finding that the alleged retaliatory actions—the failure to separate Day and Barrett, the work measurement study, and the loan review—were not causally connected to Barrett's complaint of sexual harassment.

Evidence indicates that the loan review was not out of the ordinary and that Barrett was selected for participation in the work measurement program and informed of her selection prior to the Grand Island incident. Although contrary testimony exists on these issues, we cannot say that the district court's choice between these conflicting accounts was clearly erroneous. In addition, Barrett produced no evidence that ONB's failure to separate Barrett and Day constituted part of ONB's retaliatory, oppressive conduct against Barrett. The record reveals nothing that suggests Day and Barrett should have been separated; Barrett never asked that she or Day be moved, and ONB had no reason to suspect Day of further misconduct.

*C. Constructive Discharge.*

An employee is constructively discharged when he or she involuntarily resigns to escape intolerable and illegal employment requirements. *Young v. Southwestern Savings and Loan Ass'n*, 509 F.2d 140, 144 (5th Cir.1975). Having failed to prove her claims of sexual harassment and retaliation, Barrett has not established the underlying illegality necessary to support a constructive discharge claim. *Schaulis v. CTB/McGraw-Hill, Inc.*, 496 F.Supp. 666, 676 (N.D.Cal.1980). Her charge of constructive discharge, therefore, must fall.

*III. Conclusion.*

For the foregoing reasons, and after a thorough review of the record, we conclude that the judgment of the district court should be and is hereby affirmed.

---

2. It is unclear whether Barrett is claiming that ONB retaliated against her because she complained of sexual harassment or because she complained about ONB's response to her allegation of sexual harassment. Because of our disposition of her retaliation claim, the exact nature of the complaint becomes immaterial.