**Barbara Bailey HOWARD, Plaintiff,**

v.

**John O. MARSH, Jr., Secretary of the Army, Defendant.**

**No. 81–654C(2).**

United States District Court, E.D. Missouri, E.D.

July 11, 1985.

---

Joseph Scott and David Shapiro, Kator, Scott & Heller, Washington, D.C., Irl B. Baris, St. Louis, Mo., Barbara B. Howard, Garden Grove, Cal., for plaintiff.

Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., Peter B. Loewenberg, Chief, Civilian Personnel Litigation, Washington, D.C., for defendant.

## MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court for a decision on the merits following trial to the Court. Plaintiff Barbara Bailey Howard alleges that she was discriminated against in the terms and conditions of her employment because she is a woman, is white, and filed a complaint of illegal discrimination. In addition, plaintiff maintains that she was constructively discharged from her employment as a result of intolerable working conditions. The defendant in this action is John O. Marsh, Jr., Secretary of the Army. Plaintiff rests defendant's liability on the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, *et seq.*, and this Court has jurisdiction to hear plaintiff's complaint against defendant. After careful consideration of all the evidence adduced at trial the Court concludes that plaintiff was not the victim of unlawful discrimination and adopts this memorandum as its Findings of Fact and Conclusions of Law pursuant to Fed.R. Civ.P. 52.

## I

In October of 1978 plaintiff was selected as the Equal Employment Opportunity ("EEO") Officer for the Troop Support and Aviation Material Readiness Command ("TSARCOM") located in St. Louis, Missouri. TSARCOM is a component of and a subordinate command to the Department of the Army Material Readiness Command ("DARCOM"). TSARCOM employs approximately 4,500 civilian personnel. The mission of TSARCOM is to procure aviation and troop support materiel and supplies for the United States Army. TSARCOM's EEO office provides services not only for TSARCOM civilian employees, but also for around 500 civilians at other Department of Defense commands and activities located in and around St. Louis.

Plaintiff served as EEO Officer at TSARCOM from December 3, 1978, to February 8, 1981, when plaintiff was removed from that position and downgraded to the position of Supply Cataloger. Plaintiff as an EEO Officer was rated as GS–160–13 (Step 2), and was a GS–2050–11 (Step 10) when she was demoted to the position of supply cataloger. Plaintiff resigned from government service on July 19, 1982, maintaining that the conditions of her employment were such that she was forced to resign.

Plaintiff has been a civilian employee of the United States government since 1961, in a variety of capacities including a Supply Cataloger. Since 1970 plaintiff has been involved with Equal Employment Opportunity. Plaintiff was employed as an EEO specialist at the Armament Command in Rock Island, Illinois, prior to being named EEO Officer at TSARCOM. Although plaintiff had some managerial experience prior to her employment at TSARCOM, her prior managerial responsibilities were not as extensive as those entrusted to her at TSARCOM.

When plaintiff assumed her responsibilities as an EEO Officer in December of 1978, her immediate superior was Colonel Arthur Goodall, a white male, and the TSARCOM Chief of Staff. Colonel Booker T. McManus, a black male, succeeded Colonel Goodall as Chief of Staff and plaintiff's supervisor. Plaintiff alleges that Colonel McManus discriminated against her. In fact plaintiff maintains that the entire Command Group, of which McManus was a member, was guilty of illegal discrimination. At the time of plaintiff's selection, and until July, 1980, the Commander of TSARCOM was Major General Richard H. Thompson, a white male. Following Thompson as Commander of TSARCOM was Major General Emil L. Konopnicki, a white male. The Deputy Commander of TSARCOM from November of 1979 to June, 1982, was Brigadier General James L. Hesson, a white male. (Hesson was promoted from colonel to general during this period.)

Plaintiff's annual salary at the time of her appointment in December of 1978, as a GS–13 (Step 1) EEO Officer, was $27,453. In April of 1979 plaintiff received a step increase (to Step 2) for satisfactory performance. At the outset of plaintiff's sojourn as an EEO Officer she received high marks. This, however, soon changed. On March 21, 1980, Colonel McManus, the TSARCOM Chief of Staff and plaintiff's immediate supervisor, plaintiff an annual performance appraisal of "satisfactory" for the period January 1, 1979, to January 1, 1980. This was the first annual performance appraisal of plaintiff as TSARCOM's EEO Officer. On the same date Colonel McManus gave plaintiff a separate memorandum in which he criticized plaintiff's performance in a number of areas and described her performance as "marginally satisfactory." In addition, Colonel Goodall wrote in a handwritten letter, apparently directed toward Colonel McManus, that "[w]hile Ms. Howard did many good things ... her overall manner of performance is ranked satisfactory by me for the period Jan.-Oct. '79."

On April 18, 1980, Colonel McManus notified plaintiff that a within grade step increase in salary (from GS–13 (Step 2) to GS–13 (Step 3)), scheduled for approval on April 19, 1980, was being withheld due to performance deficiencies and that a second determination on whether to withhold this step increase would be made after sixty days, but no later than June 19, 1980. Colonel McManus, on June 17, 1980, told plaintiff that he had decided to withhold the step increase. Plaintiff was also informed of her right to appeal the decision made by Colonel McManus to the Deputy Commander. Plaintiff believed this decision was based on sex discrimination, and sought EEO counseling from Ms. Mary McDavid, an employee and EEO Counselor at DARCOM's Automated Logistic Management Systems Activity.

Colonel McManus, on August 1, 1980, gave plaintiff an official "warning notice of unsatisfactory performance." This notice listed a number of performance deficiencies and informed plaintiff that if her performance did not improve to a satisfactory level within 90 days, action to remove plaintiff from her position would be considered. Following this notice plaintiff, on August 14, 1980, filed a charge of reprisal regarding the August 1, 1980, warning. Plaintiff claimed that this warning was given her because she claimed Colonel McManus discriminated against her on the basis of her sex. Plaintiff's EEO Counselor informed her that informal resolution of the discrimination claim had failed. On September 29, 1980, plaintiff filed a formal complaint of discrimination claiming that Colonel McManus discriminated against her on the basis of her sex in denying her the April, 1980, within grade step increase. Plaintiff also complained that the "warning notice of unsatisfactory performance" and certain other acts of Colonel McManus were in reprisal for plaintiff's pursuing her EEO rights.

On October 26, 1980, plaintiff submitted a second reprisal allegation regarding receipt of a memorandum from Colonel McManus on October 20, 1980, concerning alleged performance counseling sessions from June 26, 1980, to September 24, 1980. Plaintiff, on November 11, 1980, also filed

an amendment to her complaint of discrimination by claiming that she was discriminated against because she was white.

Plaintiff, on December 1, 1980, received from Colonel McManus a "notice of proposed change to a lower grade," which informed plaintiff of McManus's proposal to downgrade her from the EEO Officer position and place her in a GS–11 Supply Cataloger position. Plaintiff had previously served the government as a Supply Cataloger. On January 7, 1981, plaintiff met with the Deputy Commander of TSARCOM to reply to the proposed downgrade. This meeting did not result in a change or cancellation of the proposed downgrade. Later in January, General Konopnicki, TSARCOM's Commander, refused a petition to stay the downgrade until receipt of the investigative report in plaintiff's EEO complaint. On February 8, 1981, plaintiff was downgraded to the position of Supply Cataloger, GS–2050–11 (Step 10), with an annual salary of $29,236. At the time of the downgrade, plaintiff was earning $33,116 per year. A male replaced plaintiff as an EEO officer.

On July 19, 1982, plaintiff, citing reprisal for having pursued a discrimination complaint and continuing discrimination at TSARCOM, resigned her position as a Supply Cataloger and has not since been employed by the United States Government. Subsequent to this resignation, plaintiff filed a discrimination complaint contending that her resignation was coerced, involuntary and resulted from TSARCOM's Command Group's refusal to permit her to advance in her career because of reprisal and continuing discrimination against her. After having exhausted her administrative remedies, plaintiff filed her complaint in this Court under Title VII of the Civil Rights Act of 1964.

## II

■ In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court, speaking through Justice Powell, established the now familiar burdens in a Title VII case. Plaintiff bears the initial burden of showing a *prima facie* case. If plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reasons for the adverse employment action. Should the defendant meet this burden, the plaintiff must then demonstrate that the legitimate reasons offered by the defendant were but a pretext for discrimination.

■ The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against plaintiff remains with the plaintiff. The intermediate evidentiary burdens outlined above serve to bring litigants and the Court expeditiously and fairly to a resolution of plaintiff's claim of intentional discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The question facing triers of fact in discrimination cases is both sensitive and difficult. The prohibitions against discrimination contained in the Civil Rights Act of 1964 reflect an important national policy, and proof of intentional discrimination will often rest only on circumstantial evidence. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716–17, 103 S.Ct. 1478, 1482–83, 75 L.Ed.2d 403 (1983).

■ Plaintiff maintains that the decision to downgrade her from an EEO Officer to a Supply Cataloger, along with her poor performance ratings, were the result of unlawful sex and race discrimination, and in retaliation for filing a complaint of discrimination. A *prima facie* case of discriminatory downgrading or performance rating is established if plaintiff shows by a preponderance of the evidence: (1) that she was a member of the protected class, (2) that she was downgraded or rated poorly, and (3) that the complained of adverse employment actions were taken under circumstances which give rise to an inference of unlawful discrimination. *See McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir.1980), *cert. denied*, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814

(1981); B. Schlei, P. Grossman, *Employment Discrimination Law,* 596 (1983).

## III

The charges and countercharges that punctuated the trial of this lawsuit all focus around the central theme of plaintiff's managerial ability. Defendant claims that plaintiff could not properly fulfill the task entrusted her as an EEO Officer; plaintiff claims that she was not given an EEO office through which she could accomplish her tasks. Plaintiff further claims that she was sacrificed to placate the legitimate EEO concerns of black male employees at TSARCOM, who claimed that they were discriminated against on a class-wide basis. The Court is struck by the tensions and inflamed atmosphere that surrounded TSARCOM's employees at the time plaintiff was its EEO Officer. TSARCOM had recently been created out of the merger of two separate Army Commands, and much controversy surrounded employment decisions. Plaintiff as EEO Officer, therefore, had many demands placed on her and played a crucial role in TSARCOM's successful operation.

■ The Court has carefully examined and reflected on the weeks of testimony and the volumes of exhibits that comprise the proof in this case and finds that plaintiff has not demonstrated even a *prima facie* case of discrimination. Plaintiff, although faced with a difficult task and a shortage of full-time personnel, has failed to show that she was downgraded under circumstances which give rise to an inference of unlawful discrimination. Plaintiff called to the attention of her superiors the lack of full-time personnel in the EEO office, and her superiors came to her aid and assigned employees to the EEO office on a part-time basis. Plaintiff, however, was not able to properly manage her office and meet appropriate and reasonable due dates on the many important projects under her care. Plaintiff has not shown that she was used as a pawn of the Command Group to placate the concerns of black males with regard to charges of class-wide discrimination against them at TSARCOM. Furthermore, even if plaintiff had demonstrated a *prima facie* case of discrimination, this Court concludes that defendant has articulated legitimate nondiscriminatory reasons for his actions which the plaintiff has failed to show were a pretext for illegal discrimination—namely, plaintiff was not capable of managing the EEO office at TSARCOM.

From the voices of those who sat in the witness box and the thousands of pages of documents reviewed by the Court there echoes forth with resounding clarity the conclusion that plaintiff, although a dedicated employee, lacked the managerial ability to effectively operate the EEO office. Plaintiff was supplied with the resources needed to conduct an effective operation of the EEO office; she, however, could not manage the resources given her. Indeed, she could not even accomplish the crucial task of filling vacant positions in her office. In the fall of 1979 plaintiff was faced with numerous EEO complaints that needed attention and the lack of some full-time staff to fill positions which were authorized. When plaintiff received a list of people to choose for the position, she returned the list because in her opinion only two of the three names listed were qualified and she was concerned about the selection process. Following this incident Colonel McManus was forced to exercise her selection authority for her.

In addition, plaintiff was authorized 35 EEO Counselors to assist her. EEO Counselors are employees who devote part of their time to handling charges of discrimination informally before a formal complaint is filed. Once a formal complaint is filed the TSARCOM EEO office is to gather the necessary documentation, including the report of the EEO Counselor, and forward the complaint to DARCOM's EEO office within three days of the complaint being filed. TSARCOM does not conduct the investigation into the charges in a formal complaint; that task is assigned to the United States Army Civilian Appellate Review Agency. Plaintiff was assigned numerous people on short and long term details to assist her in timely forwarding formal complaints of discrimination to DARCOM. Plaintiff, although having the necessary re-

sources, failed to both properly prepare and timely forward formal complaints to DARCOM. Plaintiff's failure in this regard resulted in disruptions to the EEO process and prompted much criticism from DARCOM.

Plaintiff was unable to timely and properly prepare an affirmative action report, even though an Affirmative Action Plan Program Committee was formed consisting of eight members to assist in the preparation of a plan. Plaintiff failed to provide proper and timely evaluation of EEO program progress in relation to established objectives. In sum, plaintiff could not properly set priorities, delegate responsibility, and often became absorbed in minutia and detail. Plaintiff was often told of the problems existing in her EEO office, and given the opportunity and the resources needed to correct them if she could only manage them properly. She, however, could not. Plaintiff was both a sincere and a hard worker; she was not, however, a good manager, and the actions taken against her were not based on her race, her sex, or her decision to file charges of discrimination.

## IV

Plaintiff also claims that she was constructively discharged from her position as a Supply Cataloger. The decision to downgrade plaintiff to the Supply Cataloger position was not illegal discrimination, and thus may not be considered in plaintiff's claim of constructive discharge. Another ground on which plaintiff's constructive discharge claim rests is a comment allegedly made by her supervisor in the supply position that if she did not drop her EEO complaint, she would go nowhere in her career and may suffer further adverse action. Even if this comment were made, this comment, along with the other evidence adduced by plaintiff, is not sufficient for a conclusion that plaintiff was constructively discharged from her employment.

The law in the Eighth Circuit on constructive discharge is not completely clear. *Johnson v. Bunny Bread Co.*, 646 F.2d 1250 (8th Cir.1981) held that "[t]o constitute a constructive discharge, the employ-

er's actions must have been taken with the intention of forcing the employee to quit." *Id.* at 1256. However, a different panel, in *Barrett v. Omaha National Bank*, 726 F.2d 424 (8th Cir.1984), did not include intent in the definition of constructive discharge and said "[a]n employee is constructively discharged when he or she involuntarily resigns to escape intolerable and illegal employment requirements." *Id.* at 428. There exists disagreement in other circuits with respect to the intent requirement. B. Schlei, P. Grossman, *Employment Discrimination Law*, 611 (1983).

Under either standard, however, plaintiff has failed to demonstrate that she was forced into resigning her position as a Supply Cataloger. Her work environment was not so intolerable that a reasonable person could no longer be expected to remain on the job. The comment by plaintiff's supervisor, if true, has no place in the workplace; however, the evidence presented to the Court is insufficient for a finding of constructive discharge. If plaintiff's supervisor made numerous comments similar to the one attributed to him by plaintiff, the result may have been different. Such, however, was not the case.

Judgment will be entered in favor of defendant. Defendant in his answer did not request attorneys' fees, and none will be awarded.