Rita PHILLIPS, Plaintiff,

v.

TACO BELL CORP., Defendant.

No. 4:96–CV–1220 (CEJ).

United States District Court,
E.D. Missouri,
Eastern Division.

Nov. 20, 1997.

David O. Danis, Danis, Cooper, Cavanagh & Hartweger, John J. Carey, Carey & Danis, L.L.C., St. Louis, MO, for Plaintiff.

James N. Foster, Jr., Geoffrey M. Gilbert, McMahon and Berger, St. Louis, MO, for defendant.

## MEMORANDUM

JACKSON, District Judge.

This matter is before the Court on defendant's motion for summary judgment. *See* Fed.R.Civ.P. 56. The plaintiff has filed a response in opposition to the motion.

Plaintiff filed suit against her former employer, Taco Bell, Corp., alleging discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the Missouri Human Rights Act ("MHRA"), § 213.010 *et seq.*[1]

In June 1995, defendant hired plaintiff as a cashier in one of its restaurants. Plaintiff's supervisor was Duane Sonntag. Plaintiff alleges that Sonntag sexually harassed her five times between the months of March and June in 1995. Plaintiff first reported this conduct when she left a message for Scott Williams, one of defendant's managers, on June 20, 1995. Later that day Williams returned the plaintiff's call and arranged a meeting with her. On June 21, 1995, plaintiff and Williams met to discuss her claims of sexual harassment. On June 22, 1995, Williams called plaintiff and told her that there would be an investigation into her allegations but, that he had to be out of town until July 5, 1995. Williams offered to give plaintiff a two-week paid vacation until the investigation was completed if she felt uncomfortable working while the investigation was being conducted or while Williams was out of town. The plaintiff declined the vacation electing to remain at work.

On June 29, 1997, while Williams was out of town, plaintiff left a message for Williams

---

1. Plaintiff concedes that she does not have a right to sue letter from the Missouri Commission on Human Rights and that defendant, therefore, should be granted summary judgment on all claims asserted under the MHRA.

Additionally, defendant argues that despite the fact that plaintiff filed a two-count complaint (Count I for sexual discrimination and Count II for sexual harassment), this case involves only a claim of sexual harassment. The Court agrees. Plaintiff, in her response to defendant's motion for summary judgment, does not argue otherwise. In fact, plaintiff characterizes the case as one of sexual harassment. Furthermore, plaintiff has not attempted to present a prima facie case for discrimination based solely on gender. For these reasons the Court will only consider plaintiff's allegations of sexual harassment.

stating that "Duane [Sonntag] didn't get it." Williams returned plaintiff's phone call and plaintiff reported that another incident had occurred. Williams again asked plaintiff to take a two-week paid vacation while he conducted an investigation. Plaintiff agreed. Following the incident on June 29, 1995, plaintiff had no further contact with Sonntag.

Williams returned to town on July 5, 1995 and interviewed plaintiff. He notified plaintiff that Sonntag was on vacation until July 10, 1995. On July 10, 1995, Williams began his investigation of plaintiff's claims. On the same day Williams suspended Sonntag pending the investigation. Sonntag's employment with defendant was terminated on July 14, 1995.

On July 18, 1995, plaintiff went into work to check her schedule. She talked to Jeff, a manager, and alleges that he responded in a "nasty" tone of voice.

Q. If it was your intention from that point in time to return to work, when did your intention to return to work change?

A. The tone of voice of Jeff as if he knew what was going on and he had a nasty tone of voice to me, then I figure out since he had the nasty tone of voice, when I got back to work I would be asked questions from the coworkers what had happened, what's going on and all that and I didn't want to hear it.

In the short conversation between Jeff and plaintiff, neither mentioned sexual harassment, Sonntag, plaintiff's absence from work or the investigation. Plaintiff then resigned from her employment with defendant.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Title VII prohibits employers from subjecting employees to a discriminatorily hostile work environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Hostile work environment sexual harassment arises when "conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The conduct does not have to be overtly sexual in nature, but it must be unsolicited and uninvited. *Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 474 (8th Cir.1995). To be actionable, the harassment must also be sufficiently severe or pervasive "to alter the conditions of the victim's employment and create an abusive working environment." *Meritor*, 477 U.S. at 67. Isolated or sporadic acts of harassment are insufficient to make a claim of hostile work environment. *Cram*, 49 F.3d at 474. To recover for hostile work environment sexual harassment the plaintiff must show by a preponderance of the evidence that:

(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known of the harassment and failed to take proper remedial action. *Kopp v. Samaritan Health Sys., Inc.,* 13 F.3d 264, 269 (8th Cir.1993); *Burns v. McGregor Electronic Indust., Inc.,* 989 F.2d 959, 964 (8th Cir.1993).

■ Title VII does not dictate what steps an employer must take to remedy the harassment and does not require an employer to fire the wrongdoers. *Barrett v. Omaha National Bank,* 726 F.2d 424, 427 (8th Cir.1984). The employer must merely take "prompt remedial action reasonably calculated to end the harassment." *Id.*

In the present case, plaintiff did not complain about the alleged harassment until June 20, 1995. She received a return call from Williams that same day. Williams met with plaintiff the next day to further discuss her allegations. The following day, June 22, 1995, Williams called plaintiff to inform her that there would be a formal investigation and offered her a two-week paid vacation while the investigation was underway. On July 10, 1995, defendant suspended Sonntag during the investigation. On July 14, 1995, defendant fired Sonntag.

Based on the foregoing, the Court finds that the defendant, when it learned of Sonntag's conduct, took prompt remedial action reasonably calculated to end the harassment. Where, as here, the defendant took remedial action and the conduct complained of ceased, the employer is not liable for the conduct of it employee. *Spicer v. Commonwealth of Virginia,* 66 F.3d 705, 711 (4th Cir.1995); *Caleshu v. Merrill Lynch, Pierce, Fenner & Smith,* 737 F.Supp. 1070, 1083 (E.D.Mo. 1990), *aff'd,* 985 F.2d 564 (8th Cir.1991). Thus, the plaintiff has failed to meet her burden of proving a hostile work environment and her claim of sexual harassment is not actionable. *Barrett,* 726 F.2d at 427. Consequently, the defendant is entitled to judgment as a matter of law.

■ Defendant further contends that summary judgment is appropriate with regard to plaintiff's claim of constructive discharge. Plaintiff argues that she was constructively discharged when one of defendant's assistant mangers, Jeff, talked to her in a "nasty" voice. Additionally, she complains that she was constructively discharged because Jeff changed some of her hours from the day shift to the night shift.

■ "Constructive discharge occurs when an employer 'deliberately renders the employee's working conditions intolerable and thus forces the employee to quit [her] job.'" *Gartman v. Gencorp. Inc.,* 120 F.3d 127, 129 (8th Cir.1997) (quoting *Allen v. Bridgestone/Firestone, Inc.,* 81 F.3d 793, 796 (8th Cir.1996)). The employee must show that a reasonable person in her situation would find the working conditions intolerable. *Gartman,* 120 F.3d at 130. In other words, "intolerability of working conditions is judged by an objective standard, not the [employee's] subjective feelings." *Id.* A plaintiff asserting a constructive discharge claim may prove intent by showing that her resignation was a reasonably foreseeable consequence of the defendant's discriminatory conduct. *Id.* Furthermore, part of an employee's obligation to be reasonable is an obligation not to assume the worst and not to jump to conclusions too fast. *West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 498 (8th Cir.1995). An employee who quits without giving her employer a reasonable chance to work out a problem is not constructively discharged. *Id.*

In the present case, the plaintiff has not shown that a reasonable person in her situation would find the working conditions intolerable. Moreover, plaintiff did not give her employer an opportunity to remedy any problems she perceived, which were not cured by the discharge of Sonntag. Therefore, the Court finds that defendant is entitled to judgment as a matter of law as to plaintiff's constructive discharge claim.