# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1030

_____

George E. Bailey,                          *
                                           *
        Appellant,                     *
                                           *
   v.                                  *    Appeal from the United States District
                                           *    Court for the District of Minnesota.
Marvin T. Runyon, Jr., Postmaster          *
General; United States Postal Service,     *
                                           *
        Appellees.                     *

_____

Submitted:  October 21, 1998

Filed:  February 8, 1999

_____

Before WOLLMAN, ROSS and BEAM, Circuit Judges.

_____

ROSS, Circuit Judge.

George E. Bailey appeals from the district court's grant of judgment as a matter of law (JAML) in favor of his employer, the United States Postal Service, and Marvin T. Runyon, Postmaster General, (collectively "the Service"), on his sexual harassment claim under Title VII, 42 U.S.C. § 2000e et seq. (1994). We reverse and remand.

Viewed in a light most favorable to Bailey, the evidence at trial, and all reasonable inferences therefrom, reveals the following. Shortly after Bailey began working at a post office in March 1993, Bob Tylon, a co-worker, began asking Bailey if he would like to have a sexual relationship. Bailey said no, explaining he was not a homosexual. However, Tylon persisted in asking for a sexual relationship, including requests to perform oral sex on Bailey. In mid-April, Bailey informed his supervisor, Valerie Ellms, about Tylon's sexual advances. Ellms laughed and did nothing. Because Tylon persisted in asking for sexual favors, Bailey again talked to Ellms, who told him to point out Tylon to her if the conduct continued. Although Bailey later pointed out Tylon to Ellms, she again did nothing and the conduct continued.

On August 28, Tylon asked Bailey to read a note he had written. After Bailey refused, Tylon grabbed Bailey's crotch. When Bailey recoiled, Tylon again grabbed Bailey's crotch and requested to perform oral sex on him. Bailey was upset and left work. The next day Bailey told Ellms' supervisor, Vanessa Kellum, about the touching incident and that he was thinking of quitting because of Tylon's conduct. On September 6, Kellum told Bailey to fill out an incident report and that she would speak to Tylon. The next day, Kellum told Tylon to stay away from Bailey and warned that if his behavior continued, drastic action would follow. In a September 9 incident report, Bailey stated that since he began working at the post office Tylon had "constantly sexually harassed" him by "asking . . . [to] perform sex on [him] . . . and partake in other sexual activities." Bailey also stated that although he had reported the acts to his supervisor, it appeared that nothing had been done to "stop the pervasive sexual acts."

After Kellum's warning, Tylon had no contact with Bailey until a November 5 encounter in a restroom. At that time, Bailey was washing his hands when Tylon, who had been using a urinal, turned, without zipping his pants, to Bailey and told him of the discussion with Kellum. Bailey walked out of the restroom and on November 10 filed an incident report, noting the restroom encounter and the August 28 touching incident. After Brent Woodfeld, Tylon's supervisor, received a copy of the report, he instructed Tylon to have no contact with Bailey and warned if he did, he would be fired. Woodfeld also changed Tylon's work assignment so that he would not work with Bailey. Following Woodfeld's warning, Tylon had no further contact with Bailey.

Bailey claimed that Tylon's conduct caused him mental anguish, both at work and at home. Bailey also testified that since the harassment he had experienced anxiety attacks, had seen a counselor and was taking anti-depressants. On cross-examination, however, Bailey admitted that during the time he had been harassed by Tylon he had been seeing a doctor for a shoulder injury and had never mentioned the harassment. He further admitted that he did not see a counselor until June 1994 and that the counselor's notes did not mention the harassment, but only indicated that Bailey sought help for anxiety due to public speaking.

Pursuant to a special verdict form, the jury found that Bailey had been subjected to sexual harassment and that the Service had failed to act after receiving notice of the harassment, but that Bailey had not suffered damages. Bailey and the Service filed post-trial motions. The district court granted the Service's motion for JAML, holding that it had taken prompt remedial action to end the harassment, and denied Bailey's motion for JAML or in the alternative for a new trial on damages as moot.

On appeal, Bailey argues the district court erred in granting the Service's motion for JAML. Because "[t]he law places a high standard on overturning a jury verdict[,]" JAML "is proper '[o]nly when there is a complete absence of probative facts to support the conclusion reached' so that no reasonable juror could have found for the nonmoving party." Hathaway v. Runyon, 132 F.3d 1214, 1220 (8th Cir. 1997) (quoting Ryther v. KARE 11, 108 F.3d 832, 845 (8th Cir.) (en banc), cert. denied, 117 S. Ct. 2510 (1997)). Although we review the district court's grant of JAML de novo, in so doing, we "must assume as proven all facts that [Bailey's] evidence tended to show, give h[im] the benefit of all reasonable inferences, and assume that all conflicts in the evidence were resolved in h[is] favor." Id. We will affirm the grant of JAML only "when 'all the evidence points in one direction and is susceptible to no reasonable interpretation supporting the jury verdict.' " Id. (quoting Mears v. Nationwide Mut. Ins. Co., 91 F.3d 1118, 1122 (8th Cir. 1996)).

Because Bailey's claim involved harassment by a co-worker, he had to show actionable sexual harassment and that the Service " 'knew or should have known of the harassment and failed to take proper remedial action.' " Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998) (quoting Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir. 1993)); see also Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2289 (1998) (courts "uniformly judg[e] employer liability for co-worker harassment under a negligence standard"); Sharp v. City of Houston, No. 97-20602, 1999 WL 10153, at *4 (5th Cir. Jan. 12, 1999) (noting Faragher did not disturb "negligence standard govern[ing] employer liability for co-worker harassment"); Adusumilli v. City of Chicago, No. 98-1019, 1998 WL 901533, at *6 (7th Cir. Dec.

28, 1998) (same).[1] Bailey argues the court erred in holding as a matter of law that the Service took proper remedial action because his evidence was that Ellms did nothing after he reported Tylon's requests for sexual favors. Bailey also argues that Kellum's and Woodfeld's warnings to Tylon were inadequate, asserting that Tylon should have been fired, or at least suspended.

The Service correctly responds that Title VII "does not require an employer to fire a harasser." Davis v. Tri-State Mack Distrib., Inc., 981 F.2d 340, 343 (8th Cir. 1992). "Rather, what an employer must do is to take 'prompt remedial action reasonably calculated to end the harassment.' " Id. (quoting Barrett v. Omaha Nat. Bank, 726 F.2d 424, 427 (8th Cir. 1984)). The Service goes on to argue that its action was effective because after Kellum's warning, Tylon did not intentionally contact Bailey, and after Woodfeld's warning and change of Tylon's work assignment, there was no further contact. However, even if we assume that those actions were sufficient, the Service neglects the fact that Bailey testified that he had "complained to [Ellms] about [Tylon] long before the [Kellum] complaint, and that [Ellms] did nothing." Howard, 149 F.3d at 841. Thus, there is evidence supporting the jury's finding that the Service "knew of [Tylon's] conduct, but failed to put a stop to it promptly." Id.; see also Williamson v. City of Houston, 148 F.3d 462, 465 (5th Cir. 1998) (city had notice of harassment before formal complaint because plaintiff had discussed co-worker's

---

[1]We note that in Oncale v. Sundowner Offshore Serv., Inc., 118 S. Ct. 998, 1003 (1998), the Supreme Court held that "same-sex sexual harassment is actionable under Title VII." We also note that in Faragher, 118 S. Ct. at 2292-93, and Burlington Indus., Inc. v. Ellerth, 118 S. Ct. 2257, 2270 (1998), the Supreme Court held that an employer is vicariously liable for harassment by a plaintiff's supervisor, subject to certain defenses.

harassing behavior with supervisor who did nothing); Bales v. Wal-Mart Stores, Inc., 143 F.3d 1103, 1110 (8th Cir. 1998) (although employer may have taken remedial action after last complaint it was liable because it failed to take action following prior complaints of harassment).

Apparently realizing the flaw in its remedial action argument, at oral argument the Service suggested that this case could be affirmed on the basis that Tylon's conduct before the August 28 touching incident did not constitute actionable sexual harassment. We disagree. "To be actionable, the sexual harassment must have been [objectively and subjectively] 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " Hathaway, 132 F.3d at 1221 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). " '[S]imple teasing . . . offhand comments, and isolated incidents (unless extremely severe) will not amount to discriminatory changes in the terms and conditions of employment.' " Breeding v. Arthur J. Gallagher & Co., No. 98-1338, 1999 WL 13265, at *6 (8th Cir. Jan. 15, 1999) (quoting Faragher, 118 S. Ct. at 2283). However, because "[t]here is no bright line between sexual harassment and merely unpleasant conduct[,] . . . a jury's decision must generally stand." Hathaway, 132 F.3d at 1221; see also Howard, 149 F.3d at 840 ("Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury.").

Here, there was sufficient evidence to support the jury's finding of harassment. In his September 9 incident report, Bailey stated that almost from the start of his employment Tylon had "constantly sexually harassed" him by asking to "perform sex

on [him] and partake in other sexual activities." Bailey testified that Tylon made unwelcome sexual advances, including requests to perform oral sex on him, three to four times a week. See Kinman v. Omaha Pub. Sch. Dist., 94 F.3d 463, 467 (8th Cir. 1996) ("sexual harassment occurs when unwelcome sexual advances, requests for sexual favors, or other verbal or physical contact . . . creat[e] an intimidating, hostile, or offensive environment"), overruled on other grounds by Gebser v. Lago Vista Indep. Sch. Dist., 118 S. Ct. 1989 (1998). Bailey also testified that he had considered quitting because of Tylon's conduct. See Bales, 143 F.3d at 1109 ("conditions of employment are altered by harassment if the employee is discouraged from remaining in [the] job"). Thus, the jury could have reasonably concluded that Tylon's "conduct created an objectively hostile environment and that [Bailey] subjectively perceived [his] working conditions as abusive." Hathaway, 132 F.3d at 1221; see also Breeding, 1998 WL 13265, at *5 (fondling of genitals and using lewd language in front of plaintiff constituted actionable harassment); Howard, 149 F.3d at 840 (chronic sexual innuendos and unwanted physical touching constituted actionable harassment); Bales, 143 F.3d at 1109 ("pattern of offensive conversation and behavior" constituted actionable harassment); cf. Rorie v. United Postal Serv., Inc., 151 F.3d 757, 762 (8th Cir. 1998) ("we cannot say that a supervisor who pats a female employee on the back, brushes up against her, and tells her she smells good does not constitute sexual harassment as a matter of law"). [2]

---

[2]Although at one point, Bailey testified that after he reported Tylon's conduct to Ellms, Tylon kept "asking me out," this seemingly innocent characterization of the conduct must be considered in the context of Tylon's repeated requests for a sexual relationship. See Hathaway, 132 F.3d at 1222 (humiliating effect of "snickers and noises" considered in context of earlier sexual overtures).

The Service suggests that Bailey's testimony was incredible, noting conflicts in the evidence and issues affecting Bailey's credibility. However, the jury, who was aware of these matters, was responsible for assessing credibility and resolving conflicts in the evidence. See Hathaway, 132 F.3d at 1223.

Because the district court granted the Service's motion for JAML, it did not address the merits of Bailey's post-trial motion on damages. This court has held that " ' [t]he authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court.' " Sanford v. Crittenden Mem'l Hosp., 141 F.3d 882, 884 (8th Cir. 1998) (quoting Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)). Indeed, "[i]t has long been our opinion that the matter is 'basically, and should be, . . . for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards.' " Id. (quoting Solomon Dehydrating Co. v. Nodak Oil Co., 294 F.2d 439, 447 (8th Cir. 1961) (Blackmun, J.)); see also Johnson v. Cowell Steel Structures, Inc., 991 F.2d 474, 476 (8th Cir. 1993) (appeal of ruling on motion for new trial on damages "focuses our attention on the propriety of the district court's action, and not the jury's"). Thus, on remand the district court should address Bailey's arguments concerning the jury's failure to award damages. We note at oral argument that although the Service opposed a new trial on damages, it stated that if the case was reversed, an award of nominal damages and attorney's fees would be appropriate.

Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.