Suzanne HALE *v.* Jimmy LADD

91-120                                    826 S.W.2d 244

Supreme Court of Arkansas
Opinion delivered March 9, 1992

*Peel & Eddy*, by: *James S. Dunham*, for appellant.

*Mobley, Smith & Mobley*, by: *Jeff Mobley*, for appellee.

STEELE HAYS, Justice. Appellant Suzanne Hale brought this

action against appellee Jimmy Laid for breach of employment contract and for the tort of outrage. Her complaint alleged wrongful discharge and outrage based on sexual harassment while she was employed at Ladd's Furniture and Appliance Store in Dardanelle. The jury returned a verdict for the defendant on the breach of contract claim and for the plaintiff on the tort of outrage claim, awarding punitive damages of $7,500 while denying compensatory damages. Because no compensatory damages were awarded the trial court vacated the award of punitive damages and entered judgment for the defendant.

Suzanne Hale moved for a new trial, contending the jury erred in the assessment of the amount of recovery and that the verdict was against the preponderance of the evidence. Ark. R. Civ. P. 59(a)(5 and 6). On appeal she raises two points of error: one, the trial court should have ordered a new trial and, two, it should have instructed the jury that punitive damages are not recoverable without compensatory damages. Because we find the undisputed evidence to be so clearly counter to the verdict, we think the trial court's refusal to order a new trial was an abuse of discretion and accordingly we reverse and remand.

Appellant Suzanne Hale testified that she was agreeably employed as assistant sales manager at Southern Electric when Jimmy Ladd, a customer of Southern Electric, repeatedly urged her to come to work for him at Ladd's furniture store. After first refusing, she agreed when Ladd offered to match her salary and benefits and intimated that he would like to see her take over the business when he retired.

Hale started working for Ladd in min-January of 1988. There were no problems for the first three or four weeks, but then by her account she became the object of frequent suggestive remarks and unwanted physical contacts from Jimmy Ladd. She said Mr. Ladd told her she was "sexy," that she "turned him on." He began touching her, putting his hands on her legs, back, and arms. At times he would try to press her hand against some part of his pants. On one occasion she was bending over to pick up something and he grabbed her hips and pressed himself against her very hard. He would try to kiss her and once he put his arms around her, grabbed her buttocks and pressed her against him. When she raised her hands to push him away he placed both his

hands on her breasts. One incident involved his saying to her that if she would "just touch or kiss it he would come."

In mid-April, after a visit from Suzanne's husband, Mr. Ladd told her she should find work elsewhere, explaining that he would not be intimidated by her husband. She was given severance pay and told to get out. She testified that it was September before she found other employment, resulting in a loss of earnings of $2,342.63.

Former employees of Ladd Furniture corroborated generally and specifically Suzanne Hale's account of her experiences. Eleanor Lawson testified that she decided to go to work for Ladd on the suggestion that she and her husband could buy the business when Ladd retired. While she worked for him, she described repeated instances of his bumping into her as if by accident, that he would rub her breasts and her buttocks.

Susan Miller testified that she went to work for Ladd on the representation that she would be given an option to buy the store, then she was discharged abruptly and without explanation after she had pointedly declined Ladd's invitation to move in with him. Regina Henderson said Mr. Ladd told her that Suzanne Hale had the sexiest mouth he had ever seen and that he would like to take her to bed. James Ray Weve testified that Ladd told him in reference to Suzanne Hale that he would like to "get in her britches." He testified that he was in the building when Ladd thought he and Mrs. Hale were alone during a lunch break and heard Ladd ask her to "kiss it on the head."

It must be noted that the testimony of these witnesses was categorically denied by Jimmy Ladd with the exception of the testimony of Regina Henderson. Asked on cross-examination about her statement that Ladd had told her he would like to go to bed with Suzanne Hale, he said he did not recall making such a statement. Ladd's explanation for terminating Suzanne Hale was that her husband had threatened him by describing an episode involving a fellow employee of Suzanne's at another job who pursued her, telling Ladd that he had "busted his skull and caved in his ribs."

Notwithstanding the distinct imbalance in the proof supporting the plaintiff's outrage claim, it might be possible to

conclude the jury had simply resolved an issue of credibility. But the verdict itself refutes any such inferences. The jury expressly found for the plaintiff on the tort of outrage and reenforced that finding by an award of punitive damages. Thus we readily conclude, as did the jury, that the evidence supporting the claim of outrage clearly preponderates in favor of the plaintiff, Suzanne Hale. Her testimony that she sustained pecuniary as well as emotional injury attributable to the harassment was not refuted or even challenged. She testified that she became increasingly nervous and had flairups of a spastic colon exacerbated by the strain associated with the harassment.

In deciding that appellant was entitled to a new trial we rely primarily on *Takeya* v. *Didion*, 294 Ark. 611, 745 S.W.2d 614 (1988). The abuse there was physical in that the defendant, a former lover of the plaintiff, slapped her, dragged her by the throat, broke her nose, threatened to kill her and tried to suffocate her by holding her nose and stuffing a sweater in her mouth. The jury found for the plaintiff but, as here, denied compensatory damages while awarding punitive damages of $75,000. The trial court denied plaintiff's motion for a new trial and this court unanimously reversed, citing *Kroger Grocery & Baking Co.* v. *Reeves*, 210 Ark. 178, 194 S.W.2d 876 (1946).

Appellee relies on *Bell* v. *McManus*, 294 Ark. 275, 742 S.W.2d 559 (1988), where we affirmed the denial of a new trial under similar circumstances. The jury found for the plaintiff on the tort of outrage, awarding no compensatory damages and punitive damages of $3,700. Admittedly the dividing line between the two cases is indistinct. Suffice it to say that in *Bell* the plaintiff's proof as to compensatory damages was marginal and the court's instruction to the jury limited any award of compensatory damages for past mental anguish only. Perhaps no better explanation need be sought than Justice Hickman's concurring opinion to a Supplemental Opinion on Denial of Rehearing, *Takeya* v. *Didion*, 294 Ark. 614-A, 748 S.W.2d 332 (1988):

> [A]ppellee has pointed out that our decision seems entirely inconsistent with our decision in January, *Bell* v. *McManus*, 294 Ark. 275, 742 S.W.2d 559 (1988). I think the appellee deserves an explanation. The legal test in both *Bell* and this case is one of measuring the trial court's

decision, which necessarily is based on a weighing of the evidence. That means we also have to weigh the evidence as a matter of law. In *Bell* we could not say the trial judge abused his discretion. In this case the verdict on compensatory damages was clearly contrary to the preponderance of the evidence, and in our judgment the trial judge should have ordered a new trial. Just like trial judges, we sometimes look at a case and conclude the evidence is simply not there or it is overwhelming. In this case there was no doubt in our mind that the jury should have awarded compensatory damages.

■ Turning to the remaining point, that the jury should have been instructed that punitive damages are not recoverable in the absence of an award of compensatory damages, appellee correctly notes that appellant neither requested such an instruction nor tendered one of her own. Ark. R. Crim. P. 51. No extended discussion is called for. The rule in this state for many years has been that compensatory damages are a prerequisite to punitive damages. *Takeya* v. *Didion, supra*; *Bell* v. *McManus, supra*; *Stoner* v. *Houston*, 265 Ark. 928, 582 S.W.2d 28 (1979); and *Kroger Grocery Baking Co.* v. *Reeves, supra*. While the opposing view is not wanting in merit, we are unwilling to review our traditional position where the issue has not been preserved in the trial court.

For the reasons stated the judgment is reversed and the cause remanded for further proceedings.