DILLARD DEPARTMENT STORES, INC. and
Peggy Hallmark *v.* Mary ADAMS and Wayne Adams

93-583                                          867 S.W.2d 442

Supreme Court of Arkansas
Opinion delivered December 13, 1993
[Rehearing denied January 18, 1994]

*Penix, Penix and Lusby*, by: *Bill Penix* and *Robin Nix*, for appellants.

*Mike Bearden*, for appellees.

DAVID NEWBERN, Justice. Dillard Department Stores (Dillards) and Peggy Hallmark appeal from a judgment in favor of Mary Adams and her husband, Wayne Adams, the appellees. The Adamses sued Dillards and Ms. Hallmark for outrage and malicious prosecution. Dillards and Ms. Hallmark contend the Trial Court erred by allowing the jury to decide whether the tort of outrage had been committed because the evidence was insufficient to substantiate the claim. They also contend there was insufficient evidence for the jury to award punitive damages or, in the alternative, the punitive damages awarded were excessive. We find merit in the appellants' first argument and reverse and remand the case. We need not address the appellants' other contentions.

Mary Adams was shopping for a bathing suit at Dillards in Jonesboro. She tried on several suits in one of the store's dressing rooms. Peggy Hallmark, a sales manager with Dillards said that, through the vents in the dressing room door, she observed Ms. Adams switch the price tags on two bathing suits. Except for minor differences in testimony by Ms. Hallmark and Ms. Adams there is no dispute as to the remainder of the relevant events.

Ms. Adams left the dressing room with a bathing suit and continued shopping in the store. Ms. Hallmark continued observing Ms. Adams until Ms. Adams purchased the bathing suit with her Dillard's credit card. As Ms. Adams was leaving the store, Ms. Hallmark and a security guard stopped her. Identifying herself as "Dillards security," Ms. Hallmark asked Ms. Adams if she would accompany them to the rear of the store.

In a manager's office, Ms. Hallmark confronted Ms. Adams about switching the price tag to obtain the bathing suit she had purchased at a price lower than that originally marked on that suit. Ms. Adams denied any wrongdoing. The store manager and the Jonesboro Police were called. The store manager questioned Ms. Adams and then took her picture and told her she was banned from the store. The police arrived and issued a citation to Ms. Adams who was then escorted from the store. The entire incident lasted from twenty minutes to an hour.

After the incident Ms. Adams suffered from depression. Her husband became so concerned he quit his job as a truck driver as he felt the need to stay at home due to his wife's condition. Ms. Adams saw a psychologist and a psychiatrist. Both diagnosed her as being depressed. Medication was prescribed for her, and her condition stabilized somewhat.

A theft charge against Ms. Adams was dismissed by the Jonesboro Municipal Court.

The Adamses sought punitive and compensatory damages, including damages for loss of consortium for Mr. Adams. Dillards and Ms. Hallmark moved for a directed verdict at the end of the Adamses' evidence and objected to the jury being instructed on the tort of outrage at the close of the evidence. They were overruled. The jury, after being instructed on the torts of outrage and malicious prosecution, returned a general verdict in favor of Ms. Adams for $3,500 in compensatory damages and $100,000 in punitive damages and awarded Mr. Adams nothing.

### Outrage

The question we must answer is whether Ms. Adams presented sufficient evidence to send the case to the jury to decide whether Dillards and Ms. Hallmark committed the tort of outrage.

Outrage, or intentional infliction of emotional distress, was first recognized by this Court, in its current form, in *M.B.M. Co.* v. *Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980). We stated "one who by extreme and outrageous conduct wilfully and wantonly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress." We said, "[b]y extreme and outrageous conduct, we mean conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." We were quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1977).

In subsequent decisions, we have addressed outrage in a cautious manner. Our recognition of this tort is not intended to "open the doors of the courts to every slight insult or indignity one must endure in life." *Sterling Drug, Inc.* v. *Oxford*, 294 Ark.

239, 743 S.W.2d 380 (1988); *Hess* v. *Treece*, 286 Ark. 434, 693 S.W.2d 72 (1985); *Tandy Corp.* v. *Bone*, 283 Ark. 399, 678 S.W.2d 312 (1984).

We cannot say Ms. Adams presented sufficient evidence for a jury instruction on the tort of outrage. Ms. Adams testified the entire incident lasted less than an hour. During that time she was not physically touched, and while Dillards employees may have questioned her in a confrontational manner, there is no evidence that their tone was abusive or harassing. Ms. Adams testified that Ms. Hallmark initially confronted her in a professional manner and in such a way as not to draw the attention of any other customers.

We do not mean to say that Dillards' employees' actions were merely a "slight insult." We recognize Ms. Adams may well have suffered mental distress as a result of them. She was accused of a crime of which she was not convicted. We cannot, however, find in the facts alleged or shown the kind of "extreme degree" of outrageous conduct "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." Whatever the merits of the claim of Dillards and Ms. Hallmark as to Ms. Adams's conduct (and we assume no merit in them for purposes of this appeal) nothing that was done constituted conduct fitting our definition of "outrage."

Ms. Adams contends we should not reverse the jury's verdict because it was a general verdict and the jury was properly instructed on the additional tort of malicious prosecution which could have been the basis of the awards made. That may be so, but we cannot know whether the general verdict was given wholly or in part for the tort of outrage which should not have been before the jury. In *Sterling Drug, Inc.* v. *Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988), we were confronted with the same problem. The tort of outrage had gone to the jury without sufficient evidence in support of it. Other tortious conduct, in that case wrongful discharge, was also alleged, and a general verdict was returned. We said, "We cannot ascertain if [the jury] based its verdict . . . on the claim of outrage or wrongful discharge or both. Since the issue of outrage was improperly submitted to the jury, we cannot affirm the judgment of the trial court." We have recently dealt with analogous cases in which a jury has been

improperly instructed and the party complaining about the error has been unable conclusively to show prejudice. We have made it clear that when an erroneous instruction has been given and a jury has rendered a general verdict from which prejudice due to the error cannot be ascertained, we must reverse, *Skinner* v. *R.J. Griffin, Inc.*, 313 Ark. 430, 855 S.W.2d 913 (1993), unless some additional factor makes it clear that the erroneous instruction was harmless. *See Davis* v. *Davis*, 313 Ark. 549, 856 S.W.2d 284 (1993). We find nothing in this case which would make the instruction on outrage harmless.

Reversed and remanded.

DUDLEY AND BROWN, JJ., not participating.