Jeffrey SHARROW, Plaintiff,

v.

John H. BAILEY, Jr., M.D., the Williamsport Hospital and Medical Center, Defendants.

No. 4:CV–95–0531.

United States District Court, M.D. Pennsylvania.

Nov. 17, 1995.

190

J. Michael Wiley, Rieders, Travis, Mussina, Humphrey & Harris, Williamsport, PA, for plaintiff.

C. Edward S. Mitchell, Bret J. Southard, Mitchell, Mitchell, Gray & Gallagher, Williamsport, PA, for defendant Bailey.

Sean P. Roman, McCormick, Reeder, Nichols, Bahl, Knecht & Person, Williamsport, PA, for defendant Williamsport Hospital and Medical Center.

## MEMORANDUM

McCLURE, District Judge.

**BACKGROUND:**

Plaintiff Jeffrey Sharrow filed this action to recover for alleged discrimination against by him by defendants John Bailey, Jr., M.D. and the Williamsport Hospital and Medical Center (the hospital) on the basis of his HIV [1]-positive status.

Plaintiff is a double below-the-knees amputee as a result of an automobile accident. On or about September 29, 1994, he was referred to the hospital emergency room by the hospital's Ambulatory Care Clinic with complaints of pain in his right leg and a suspected infection in that leg. Plaintiff was also experiencing fever and chills.

Plaintiff was admitted by Dr. Stephen Weber with a principal diagnosis of an abscess of the right thigh and a secondary diagnosis of osteomyelitis of the right femur. I.V. antibiotics were prescribed, and blood cultures, X-rays and a consultation with an orthopedic surgeon were scheduled.

Dr. Bailey was the orthopedic consult. After reviewing plaintiff's x-rays, he concluded that the hardware surgically implanted in plaintiff's right femur was infected. Further testing confirmed his diagnosis, revealing that the right femur rod was definitely loose and probably infected.

Surgery was scheduled for October 7, 1994.[2] Dr. Bailey requested the use of protective suits for himself and the surgical team before he would go forward with the surgery. Such gear was not routinely made available by the hospital, and his request was not granted. Plaintiff's surgery was performed the following day, October 8, 1994, at the hospital by Dr. DiSimone. Plaintiff made a full recovery.

Plaintiff's allegations arise out of the one-day delay occasioned by Dr. Bailey's refusal to perform the surgery without first obtaining protective suits for himself and his surgical staff. Plaintiff alleges that such suits were not necessary under currently existing standards established by the Center for Disease Control (CDC) and that Dr. Bailey's insistence on their use was, therefore, improper.

Plaintiff alleges federal claims against both defendants under: 1) the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA) (Count I); and 2) section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count II). He also alleges state claims against Dr. Bailey for the infliction of emotional distress (Count III) and medical mal-

---

1. HIV is the acronym for human immunodeficiency virus.

2. Although plaintiff's complaint alleges that surgery was scheduled for November 7, 1994, all parties agree that this is a typographic error and should have read October 7, 1994. (See: plaintiff's complaint, ¶ 16).

practice (Count V),[3] and against the hospital on grounds of vicarious liability stemming from the conduct of Dr. Bailey, who is alleged to be an "agent, servant, employee, director or officer" of the hospital (Count VI) and direct liability of the hospital stemming from an alleged failure to train its staff in the proper treatment of HIV-positive patients. Plaintiff seeks compensatory and punitive damages.

Before the court are: 1) a Rule 12(b) motion to dismiss filed by Dr. Bailey (record document no. 3); and 2) a motion for summary judgment filed by the hospital (record document no. 23). Both motions will be disposed of as motions to dismiss, there having been inadequate opportunity for plaintiff to conduct discovery on key points.

For the reasons which follow, we will enter an order: 1) granting Dr. Bailey's motion in part by dismissing Counts III and V asserted against him, and 2) denying the hospital's motion to dismiss.

## DISCUSSION

### MOTIONS FILED

Dr. Bailey submitted an affidavit in support of his Rule 12(b) motion and urges the court to consider the latter a motion for summary judgment as permitted under Rule 12(b)(6). Plaintiff opposes Dr. Bailey's request and the hospital's motion for summary judgment on the ground that motions for summary judgment are premature since plaintiff has had no opportunity to conduct discovery on issues key to the grant or denial of defendant's motion. We agree that motions for summary judgment are premature and will rule on both pending motions under Rule 12(b).

■ In deciding a Rule 12(b) motion, we are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir.1994). "In determining whether a claim should be dismissed under Rule

12(b)(6)," we look "only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Id.* Dismissal is not appropriate unless "it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." *Id.*

### ADA claims against Dr. Bailey

The ADA provides that:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

■ To establish liability under this section, a plaintiff must prove that he or she: 1) has a disability; 2) was discriminated against on the basis of that disability; 3) was thereby denied goods or services; 4) by a place of public accommodation by the owner or operator of that facility.

"Disability" is defined under the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(2). Individuals diagnosed as HIV-positive are considered disabled for purposes of the act, whether they are symptomatic or asymptomatic. 28 C.F.R. § 36.104.

■ In the context of medical care, allegations that the plaintiff did not receive the same care as others because of his or her disability state a claim under the act. *United States v. Morvant*, 898 F.Supp. 1157, 1161 (E.D.La.1995) ("Referral because of the need for 'special' infection control precautions of persons with HIV or AIDS is not appropriate.")

---

**3.** No count IV is alleged in the complaint. We will use plaintiff's numbering system to avoid confusion.

### Plaintiff's allegations

■ Defendant Bailey argues that dismissal or summary judgment in his favor is appropriate because plaintiff cannot establish that he was discriminated against on the basis of his HIV-positive status, an acknowledged disability for ADA purposes, by being denied medical services. Dr. Bailey also argues that he is not the owner or operator of a public accommodation, because he is not a hospital employee and holds no position of authority there.

Plaintiff alleges the existence of all four elements necessary to state a cause of action under the act. Although defendant challenges the factual underpinnings of those averments, on a Rule 12(b) motion, the court cannot look beyond the factual allegation of the complaint.

■ Plaintiff alleges that, because of his HIV-positive status, Dr. Bailey conditioned the performance of his surgery on safeguards above and beyond the recommendations of the Center for Disease Control (CDC) and that the imposition of those additional and allegedly unnecessary safeguards constituted the illegal deprivation of a service. The denial of equal treatment by virtue of plaintiff's disability violates the ADA. *D.B. v. Bloom,* 896 F.Supp. 166, 169–70 (D.N.J.1995). See also: 28 C.F.R. § 36.202(a) and (b).

■ Contrary to defendant's argument, Sharrow is not required to show that he holds a position of authority with the hospital to establish that he owns or operates a "public accommodation." Cf. *Howe v. Hull,* 874 F.Supp. 779, 787 (N.D.Ohio 1994) (liability of treating physician dependent upon a showing that he held a position with the hospital which gave him authority to grant or withhold medical services from plaintiff). The "professional offices of health care providers are places of public accommodation" for ADA purposes. *Woolfolk v. Duncan,* 872 F.Supp. 1381, 1391 (E.D.Pa.1995). See also: 42 U.S.C. § 12181(7)(F) and *D.B. v. Bloom,* 896 F.Supp. at 170 ("[A] dental services provider is a place of public accommodation by the terms of the ADA.") and *United States v. Morvant,* 898 F.Supp. 1157, 1161 n. 3 (E.D.La.1995).

Under this standard, Dr. Bailey's operation of a medical practice renders him the owner or operator of a public accommodation for ADA purposes. We do not find it dispositive that defendant examined plaintiff at the hospital and not at his private office. Although the statute conditions relief upon a showing that services were denied at or by a place of public accommodation, the obvious intent is to preclude the denial of services available to the public generally by reason of an individual's disability. To superimpose on the statute a requirement that the plaintiff must present himself or herself at the defendant's place of business and there be denied service or receive unequal service would be illogical and contrary to the underlying intent of the Act.

Here, the result is no different than a situation in which a patient telephones a dentist or physician, informs him of his disability, e.g. his HIV-positive status, and is denied treatment on the basis of that disability. The fact that the denial did not take place on defendant's premises does not mean that no violation occurred and no cause of action exists. That was the conclusion of the First Circuit Court of Appeals in *Carparts Distribution Center v. Automotive Wholesaler's Association of New England,* 37 F.3d 12, 19 (1st Cir.1994). In concluding that Congress plainly did not intend the ADA to apply only to those persons who enter a physical structure which comes within the ambit of the Act, the court stated:

> It would be irrational to conclude that persons who enter an office to purchase services are protected by the ADA, but persons who purchase the same services over the telephone are not. Congress could not have intended such an absurd result.

*Id.*

On that basis, we find plaintiff's allegations sufficient to state a cause of action under the ADA against Dr. Bailey.

Defendant Bailey's motion to dismiss Count I for failure to state a cause of action will be denied.

## Rehabilitation Act claims against Dr. Bailey

■ Count II asserts a claim under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Section 504 provides that:

No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

28 U.S.C. § 794(a). Section 504 " 'creates a private right of action in favor of persons who allege to have been subjected to illegal discrimination based on handicap.' " *Woolfolk v. Duncan*, 872 F.Supp. 1381, 1387 (E.D.Pa.1995), quoting *Strathie v. Department of Transportation*, 716 F.2d 227, 229 (3d Cir.1983).

■ To make out a *prima facie* case under the Act a plaintiff must show: (1) that he is a handicapped under the Act; (2) that he is otherwise qualified; (3) that the relevant program received federal financial assistance; and (4) that the defendants' refusal to perform surgery impermissibly discriminated against him on the basis of his physical handicap. *Miller v. Spicer*, 822 F.Supp. 158, 169–70 (D.Del.1993), citing *Bonner v. Lewis*, 857 F.2d 559, 562 (9th Cir.1988).

■ Although section 504 was initially adopted to give handicapped individuals equal access to employment opportunities and educational programs, it has been applied in the medical context to ensure that individuals are not denied treatment or discriminated against by federally-supported entities because of a disability. *Woolfolk*, 872 F.Supp. at 1388.[4] In this context, "disability alone is not a permissible ground for withholding medical benefits." *Id.* at 1389.

■ Plaintiff alleges that defendant is the recipient of federal funding in his private practice. For section 504 purposes, a "program or activity" that receives federal funds is defined as:

all of the operations of ... an entire corporation, partnership, or other private organization, or an entire sole proprietorship ... which is principally engaged in the business of providing ... health care ... any part of which is extended Federal financial assistance.

29 U.S.C. § 794(b). It is not necessary that federal funds be received for the care and treatment of the complaining plaintiff. Receipt of federal funding in the form of Medicare or Medicaid payments for the care rendered to any patient brings the treating physician, hospital or medical center within the scope of the Act.

This much was made clear by a 1988 amendment to section 504, Rehabilitation Act of 1973, Pub.L. No. 99–506, 100 Stat. 1807, 1810, 1844 (current version at 29 U.S.C. § 794), rejecting a "program specific approach" endorsed by the United States Supreme Court in *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984) and *Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984) (Title IX case). See: *Miller v. Spicer*, 822 F.Supp. 158, 163 n. 2 (D.Del.1993). Cf. *Doe v. Jamaica Hospital*, 202 A.D.2d 386, 608 N.Y.S.2d 518, 519 (N.Y.App.Div.1994) (Physician not subject to liability under section 504 solely because he was an employee of a federally-funded hospital).

Dr. Bailey argues that plaintiff fails to state a claim against him under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, because he receives no federal funding in connection with the treatment of plaintiff or any patient in his private practice. Although defendant supports his motion with an affidavit to that effect, as we stated above, we decline to consider matters outside the pleadings, since the plaintiff has had no opportunity to discover evidence which may contradict defendant's statement on this point.

Plaintiff's allegations are sufficient to state a claim under section 504 and, therefore, defendant's motion to dismiss Count II will be denied.

---

4. For a discussion of the absence of controlling authority applying section 504 in a medical context and an analysis of the persuasive authority on this issue, see: *Woolfolk*, 872 F.Supp. at 1388 n. 10.

### Infliction of emotional distress

Count III alleges a state law claim for intentional and/or negligent infliction of emotional distress against Dr. Bailey.

 Pennsylvania law tracks section 46 of the *Restatement (Second) of Torts*, § 46 (1965) on this issue.[5] To recover on a claim of intentional infliction of emotional distress, the plaintiff must demonstrate that the defendant "by extreme and outrageous conduct intentionally or recklessly" caused the plaintiff to suffer "severe emotional distress." Such conduct is actionable only if the plaintiff seeks medical treatment for the emotional or physical harm allegedly resulting from defendant's conduct.

 "It is the court's responsibility to determine if the conduct alleged ... reaches the requisite level of outrageousness" under section 46 standards. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1486–87 (3d Cir. 1990). Comment d of section 46 of the *Restatement (Second) of Torts*, defines what constitutes actionable conduct, stating:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must neces-

sarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

*Restatement (Second) of Torts*, § 46 comment d (1965). Where the relationship between plaintiff and defendant is one of "trust and confidence," for example, patient-physician, the standard is less stringent. See: *Cummings v. Pinder*, 574 A.2d 843, 845 (Del. Supr.1990) (attorney/client relationship).

 The conduct alleged here does not rise to this level, even taking into consideration the patient/physician relationship which existed between plaintiff and defendant. All that plaintiff alleges is that defendant told him that he was seeking to obtain special protective gear from the hospital before performing the surgery. There is nothing before us to suggest that defendant's statements on this matter were in any way made in a manner insulting or offensive to plaintiff or that plaintiff perceived them as such or suffered any emotional distress. On that basis, we will dismiss plaintiff's claim for the intentional infliction of emotional distress. Compare: *Field*, (worker allegedly exposed to high levels of radiation during work for a power company, stated a claim against the power company for intentional infliction of emotional distress, pursuant to section 46.) and *Miller v. Spicer*, 822 F.Supp. at 169–70 (plaintiff patient was treated "angrily and hostilely" during the examination, after which the doctor "stormed off," then, based

---

5. Although there is some dispute about whether such a cause of action exists under Pennsylvania law, stemming from the Pennsylvania Supreme Court's reluctance in *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988 (1987) to adopt section 46 as the law of the Commonwealth, most decisions post-*Kazatsky* have held that such claims are actionable under Pennsylvania law. See, e.g., *Field v. Philadelphia Electric Company*, 388 Pa.Super. 400, 565 A.2d 1170 (1989). Those which have held otherwise, (See, e.g., *Ford v. Isdaner*, 374 Pa.Super.

40, 44, 542 A.2d 137, 139 (1988) ("*Kazatsky* makes clear that the tort of intentional infliction of emotional distress is not recognized in Pennsylvania".), are in the minority. In cases applying Pennsylvania law, the United States Court of Appeals for the Third Circuit has held that Pennsylvania law does recognize claims for the intentional infliction of emotional distress, See, e.g. *Cox v. Keystone Carbon*, 861 F.2d 390, 395 (3d Cir.1988). On the strength of that recognition, we find such claims viable.

 

on rumor and innuendo concluded that plaintiff was a homosexual and was therefore likely to be infected with the AIDS virus—and based on these suppositions, refused to treat the plaintiff and had him transferred to another hospital, despite the fact that the resulting delay in treatment posed a risk to plaintiff) and *Woolfolk,* 872 F.Supp. at 1391.

 Plaintiff's claim for the negligent infliction of emotional distress suffers the same fate, for similar reasons. Essential to a claim for the negligent infliction of emotional distress are allegations and proof that the plaintiff suffered emotional harm as a result of the negligence of the defendant. There are no allegations to that effect.

Count III will, therefore, be dismissed.

## SUMMARY JUDGMENT MOTION FILED BY THE HOSPITAL

 Counts I and II assert claims against the hospital under the ADA and section 504. Count VI asserts a vicarious liability claim against the hospital. The hospital moves for dismissal of all three[6] on the ground that no employment relationship existed between it and Dr. Bailey, and there exists no basis for the imposition of liability against it based on the conduct or decisions of any hospital employee, officer or administrator.

With the exception of plaintiff's "failure to train" claim asserted in Count VII, liability exists on the part of the hospital only if and to the extent that it can be held vicariously liable for the conduct of Dr. Bailey in requesting the protective suits before operating on plaintiff. See generally, *Glanz v. Vernick,* 756 F.Supp. 632 (D.Mass.1991) (hospital was found liable for the discriminatory actions of its employee doctor on respondeat superior basis).

Plaintiff alleges the existence of an employment relationship between Dr. Bailey and the hospital. Although defendants deny the existence of any such relationship, asserting that Dr. Bailey had staff privileges only, as we stated above, we think it only just that plaintiff have an opportunity to conduct dis-

covery and ascertain whether any facts exist which cast doubt on defendant's assertion. At this stage, plaintiff's allegation is sufficient to support the claims made against the hospital and, for that reason, as well as the reasons discussed above in connection with the assertion of ADA and section 504 claims against Dr. Bailey, we will deny defendant's motion without prejudice and subject to renewal after plaintiff has had an opportunity to further develop the record.

For these reasons, defendant hospital's motion will be denied without prejudice.

---

**6.** For the reasons stated above, defendant's motion for summary judgment is disposed of under Rule 12(b).