Cathy McQUAY, Sam McQuay, Sue Beebe, Sharion Cantrell,
Rachel Keech, Charman Rowe,
Dennis Rowe, and Randy Thatch *v.*
Randall GUNTHARP, M.D., and Northeast Arkansas Internal
Medicine Clinic, d/b/a Pocahontas Family Clinic

96-1523                                        963 S.W.2d 583

Supreme Court of Arkansas
Opinion delivered February 19, 1998

*Boswell, Tucker, Brewster & Hicks*, by: *George R. Wise, Jr.*, for appellants.

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *Lucinda McDaniel*, for appellees.

DONALD L. CORBIN, Justice. Appellants Cathy and Sam McQuay, Sue Beebe, Sharion Cantrell, Rachel Keech, Charman and Dennis Rowe, and Randy Thatch, appeal the judgment of the Randolph County Circuit Court dismissing with prejudice their claim against Appellees Dr. Randall Guntharp and Northeast Arkansas Internal Medicine Clinic. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(15), as it presents a question concerning the law of torts. Appellants raise one point for reversal. We reverse.

Dr. Guntharp is a licensed physician with a medical practice in Pocahontas, employed by the Northeast Arkansas Internal Medicine Clinic, d/b/a Pocahontas Family Clinic. It is undisputed that he last saw Appellants in his office on the following dates: Rachel Keech on November 30, 1993; Charman Rowe on February 4, 1994; Sharion Cantrell on March 11, 1994; Randy Thatch on April 4, 1994; Sue Beebe on October 25, 1994; and Cathy McQuay on January 30, 1995. On February 28, 1996, Appellants filed a complaint for the tort of outrage, alleging that Dr. Guntharp had "improperly touched, examined, and otherwise

fondled" their breasts during their physical examinations. In an amended complaint filed on April 25, 1996, Appellants Sam McQuay and Dennis Rowe alleged a loss of consortium of their wives based upon Dr. Guntharp's outrageous conduct.

Appellees filed a motion to dismiss the complaint on April 3, 1996, stating that the allegations of wrongful touching constituted a battery, and were thus barred by the one-year statute of limitations, as provided in Ark. Code Ann. § 16-56-104 (Supp. 1995). Attached to the motion as Exhibit 2 was Dr. Guntharp's affidavit, which merely set out the last dates on which he had seen each of the Appellants in his office. Appellees alternatively moved to dismiss the complaint on their theory that the allegations of distress arising from Dr. Guntharp's professional services constituted a medical injury, which therefore barred the claims of Rachel Keech and Charman Rowe through the two-year statute of limitations. *See* Ark. Code Ann. § 16-114-203 (Supp. 1997).

The trial court dismissed the complaint with prejudice, holding that Appellants' claims constituted a battery and was therefore barred by the one-year statute of limitations applicable to such action. At the dismissal hearing, the trial court stated that the facts pleaded in the case did not rise to the level of outrage and added, "it's got to be terrible in order for outrage to occur." On appeal, Appellants do not dispute that the initial complaint was filed more than one year after Dr. Guntharp had any contact with each of them. Instead, they argue that the trial court erred by finding that the complaint described claims for battery instead of outrage.

■ ■ Ordinarily, when matters outside the pleadings are presented and not excluded by the trial court in connection with a motion to dismiss under ARCP Rule 12(b)(6), we treat the motion as one for summary judgment under ARCP Rule 56. *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996). The matters to be considered in summary judgment proceedings are limited to affidavits, depositions, admissions, and answers to interrogatories. *Id.* Here, the trial court considered Dr. Guntharp's affidavit in support of Appellees' assertion that the claim was barred by the one-year statute of limitations for battery or, alternatively, the two-year statute of limitations for medical injuries.

The circumstances of this case are somewhat unusual in that the trial court's dismissal of the case was based solely upon its characterization of the nature of the claim, which resulted in a ruling that the action was barred by the statute of limitations. Accordingly, we must decide whether the trial court erred in characterizing the claim as a battery, as opposed to outrage, and thus ruling that the action was barred by the one-year statute of limitations pertaining to battery. In making this determination, we must look to the complaint itself. *O'Bryant v. Horn*, 297 Ark. 617, 764 S.W.2d 445 (1989); *Dunlap v. McCarty*, 284 Ark. 5, 678 S.W.2d 361 (1984). *See also Goldsby v. Fairley*, 309 Ark. 380, 831 S.W.2d 142 (1992) (holding that in making the determination on the application of the statute of limitations, this court looks to the complaint itself, despite the fact that the trial court had actually granted summary judgment). Where two or more statutes of limitations apply to a cause of action, we generally apply the statute with the longest limitations. *O'Bryant*, 297 Ark. 617, 764 S.W.2d 445; *Jefferson v. Nero*, 225 Ark. 302, 280 S.W.2d 884 (1955). Although the complaint states that the action is one for outrage, we must look to the facts alleged, as Arkansas does not recognize "notice pleadings," only "facts pleadings." *Dunlap*, 284 Ark. at 7, 678 S.W.2d at 363. We look to the gist of the action in making such a determination. *O'Bryant*, 297 Ark. 617, 764 S.W.2d 445; *Andrews v. McDougal*, 292 Ark. 590, 731 S.W.2d 779 (1987).

To establish an outrage claim, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Angle v. Alexander*, 328 Ark. 714, 945 S.W.2d 933 (1997). The type of conduct that meets the standard for outrage must be determined on a case-by-case basis. *Hollomon v. Keadle*, 326 Ark. 168, 931 S.W.2d 413 (1996). This court gives a narrow view to the tort of outrage, and requires clear-cut proof to establish the ele-

ments in outrage cases. *Croom v. Younts*, 323 Ark. 95, 913 S.W.2d 283 (1996). Merely describing the conduct as outrageous does not make it so. *Renfro v. Adkins*, 323 Ark. 288, 914 S.W.2d 306 (1996). Clear-cut proof, however, does not mean proof greater than a preponderance of the evidence. *Croom*, 323 Ark. 95, 913 S.W.2d 283.

In *M.B.M. Co., Inc. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980), this court officially recognized the separate tort of outrage, relying in part on the teachings of Professor Prosser:

> [Professor Prosser] theorized that there was no necessity that a tort have a name. According to him, the new tort consisted of intentional, outrageous infliction of mental suffering in the extreme form and that it resembled assault. He pointed out that, in spite of the fact that mental anguish had been recognized in early assault cases, the law had been reluctant to accept interest in peace of mind as entitled to independent legal protection. He described the matter dealt with in this new tort as outrageous conduct of a kind especially calculated to cause serious mental and emotional disturbance. Prof. Prosser pointed out that in many cases in which recovery for mental suffering was permitted as parasitic damage, that element was the only substantial damage actually sustained. Our cases are certainly illustrative of this statement.

*Id.* at 278, 596 S.W.2d at 686 (citing William L. Prosser, *Intentional Infliction of Mental Suffering: A New Tort*, 37 MICH. L. REV. 874 (1939)). This court stated further:

> [W]e can and do now recognize that one who by extreme and outrageous conduct wilfully or wantonly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress.
>
> It is of little consequence that different terms are used in describing the element of compensable damages involved as mental suffering, mental anguish, emotional distress, etc. Prof. Prosser sees the term mental anguish comprehensive enough to cover everything from nervous shock to emotional upset, and agrees that the words emotional distress may well be used. In his view they include all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, anger, embarrassment, chagrin, disappointment, worry and nausea. *The emotional distress*

> *for which damages may be sought must be so severe that no reasonable person could be expected to endure it. It must be reasonable and justified under the circumstances. Liability arises only when the distress is extreme.*
>
> > *By extreme and outrageous conduct, we mean conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.*

*Id.* at 280, 596 S.W.2d at 687 (citations omitted) (emphasis added). Additionally, in *M.B.M. Co.*, this court cited with approval Professor Prosser's theory that the relationship between the plaintiff and the defendant may give rise to the extreme and outrageous nature of the conduct:

> Prof. Prosser states that there are cases in which the extreme and outrageous nature of the conduct arises *not so much from what is done as from the abuse by the defendant of a relationship with the plaintiff which gives him power to damage the plaintiff's interests.*

*Id.* at 281, 596 S.W.2d at 688 (emphasis added) (citing William L. Prosser, *Insult & Outrage*, 44 CAL. L. REV. 40 (1956)). Similarly, in *Croom*, 323 Ark. 95, 913 S.W.2d 283, wherein the plaintiff asserted a claim for outrage based upon sexual acts, this court viewed as important the relationship between the plaintiff, a fifteen-year-old girl, and the defendant, her fifty-one-year-old cousin, holding that "[t]he conclusion that his age *and relationship* exerted considerable influence over a minor girl is undeniable." *Id.* at 103, 913 S.W.2d at 287 (emphasis added).

In *Jefferson*, 225 Ark. 302, 280 S.W.2d 884, the plaintiff, a patron in a local tavern, had filed an action alleging that the defendant, the owner and proprietor of the tavern, had violated his duty of ordinary care in unlawfully injuring the plaintiff. The facts demonstrated that the defendant had shot the plaintiff after the two men had been engaged in an altercation inside the tavern. The complaint alleged that the relationship of proprietor-invitee existed between the parties, and that the defendant-proprietor had attempted to eject plaintiff-invitee from the tavern, using more force than was necessary, causing injury to the plaintiff. On appeal to this court, the defendant argued that the action was really one for assault and battery, and that the trial court had erred

in refusing to dismiss the action as being barred by the one-year statute of limitations. This court agreed with the trial court's ruling that the claim was one for negligence founded on an implied liability growing out of a special relationship, that of proprietor-invitee, which may be brought within three years. This court rejected the defendant's citation to the prior decision of *McAlister v. Gunter*, 164 Ark. 611, 262 S.W. 636 (1924), in which this court held that an action for shooting and wounding the plaintiff was barred by the one-year statute of limitations. In distinguishing that holding from the facts of the case before it, the *Jefferson* court stated that "[t]he effect of our holding in that case was that an assault and battery was the only cause of action relied upon by the plaintiff, and that no special relationship, like that of proprietor-invitee asserted here, was alleged or proved." *Jefferson*, 225 Ark. at 305, 280 S.W.2d at 886. In concluding that the claim was not barred by the statute of limitations, this court relied on the general principle that where two statutes of limitations may apply, the longest of the two is ordinarily applied.

▪ Notwithstanding the way in which Appellants have pleaded their claim, Appellees argue that the gist of this case is a claim for battery and not one of outrage. Relying on *Turner v. Baptist Medical Ctr.*, 275 Ark. 424, 631 S.W.2d 275 (1982), Appellees state that the alleged mental distress is merely an element of damage resulting from the wrongful touching, which constitutes a battery. Appellees contend in the alternative that the claim is one for medical injury and, as such, is governed by the two-year statute of limitations found in section 16-114-203. Although Appellees raised the issue of the applicability of the statute of limitations pertaining to medical injury in their motion to dismiss, the record does not reflect that the trial court ever ruled on the issue. As such, we do not address the argument on appeal. *See Slaton v. Slaton*, 330 Ark. 287, 956 S.W.2d 150 (1997).

Appellants respond by arguing that the *Turner* case dealt mainly with the tort of false imprisonment and can be distinguished on the particular facts of that case. They argue that the holding in *Jefferson*, 225 Ark. 302, 280 S.W.2d 884, supports their position, as there is a special relationship between a doctor and a patient, and the outrage lies in the doctor's violation of the trust

the women had placed in him. They argue that the existence of a special relationship justifies the finding by this court that the gist of the claim arose out of the violation of that relationship, rather than the physical touching. We agree.

In *Turner*, the plaintiff brought an action against Baptist Medical Center for false imprisonment and assault and battery. The plaintiff alleged that the defendant hospital had illegally confined her to its hospital for approximately sixteen days and had mistreated her during that time. The plaintiff filed an amended complaint to include as a defendant Dr. Charles Betts, asserting false imprisonment, assault and battery, and the intentional infliction of mental and emotional distress. The trial court entered summary judgment in favor of the hospital and dismissed the claims against Dr. Betts as being barred by the statute of limitations. On appeal, this court upheld the trial court's dismissal of the claims against Dr. Betts, holding that they were barred by the one-year statute of limitations governing false imprisonment and battery. As to the claim of intentional infliction of emotional distress, this court held:

> No facts were alleged that would make the assertion of mental and emotional distress anything more than an element of damage flowing from the imprisonment and mistreatment; so the same one-year statute would apply.

*Turner*, 275 Ark. at 426, 631 S.W.2d at 277. It is upon this language that Appellees rely. That reliance is misplaced, however, as the facts alleged in the present complaint establish that the outrage flows not merely from the physical touching of the women's breasts, which would make out a claim for battery, but from the violation of a trusted relationship. In this respect, the trauma suffered is not the result of the act of unwanted, improper physical touching, but from the position and occupation of the actor.

In looking to other jurisdictions, we observe that in *Mindt v. Shavers*, 337 N.W.2d 97 (Neb. 1983), a sexual-assault case, the Supreme Court of Nebraska found that while the victim could have chosen to seek recovery on the theory of assault and battery, if properly pleaded, she was equally able to seek recovery on the

theory of an intentional infliction of emotional distress. The court concluded:

> [A] "cause of action" is the operative facts which give rise to a "right of action" or the remedial right affording redress. Thus, there may be several rights of action arising out of a cause of action. A single cause of action may give rise to more than one theory upon which recovery may be had.
>
> . . . .
>
> Applying this principle to the instant case, it is apparent that the facts of the case give rise to two possible theories of recovery, one for assault and battery and the other for the intentional infliction of severe emotional distress.

*Id.* at 100 (citations omitted). The court stated that the very nature of the tortious act involved in that case was uniquely appropriate for a suit based upon a theory of the intentional infliction of emotional distress, reasoning that "[a] sexual assault may involve much more than a mere assault and battery." *Id.* at 101. We are persuaded by that reasoning.

The complaint filed below demonstrates sufficient facts to support a claim for outrage separate and apart from a claim for battery. Appellants were patients of Dr. Guntharp. During their physical examinations, he informed them that he needed to check their heart rate or lungs. While using a stethoscope, Dr. Guntharp improperly touched, examined, and fondled Appellants' breasts. Appellants stated that as a result of the trauma of the incident, they have suffered and continue to suffer from extreme mental anguish. Appellants specifically pleaded that the trauma of having a doctor, whom each Appellant had trusted, fondle their breasts in a sexually suggestive manner has caused all of them to be less trusting of physicians in general. Appellants claimed that as a result of these acts, they missed work and should be compensated for lost wages. Appellants claimed further to have sustained medical expenses in the past, and that they may sustain future medical expenses. Appellants Sam McQuay and Dennis Rowe asserted that they have suffered a loss of consortium of their wives as a result of Dr. Guntharp's actions. The foregoing facts sufficiently state a claim for outrage. The trial court thus erred in characterizing the cause of action as constituting the tort of battery.

The nature of the physician-patient relationship and the nature .of the allegations presented by Appellants create the appropriateness of a suit for tort of outrage. A patient entrusts his or her body and sense of dignity to a physician. The patient subjects himself or herself to a loss of this dignity and a loss of privacy by even divulging his or her personal thoughts as to what ails him or her. Looking to the facts alleged in the complaint, it is apparent that these patients were most vulnerable by presenting their bodies to a physician whom they trusted to exercise professionalism in his treatment, only to be taken advantage of by a doctor seeking his own personal gratification.

We thus conclude that the trial court erred in dismissing the complaint, as sufficient facts were alleged to state a cause of action for the tort of outrage, which is governed by the three-year statute of limitations found in Ark. Code Ann. § 16-56-105 (1987). Accordingly, we reverse the dismissal of the complaint and remand the matter to the trial court for further proceedings consistent with our decision.

CHARLES A. BANKS, Sp.J., joins in this opinion.

NEWBERN and IMBER, JJ., dissent.

GLAZE, J., not participating.

DAVID NEWBERN, Justice, dissenting. To establish the tort of outrage or intentional infliction of emotional distress, a plaintiff must prove (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct, (2) the conduct was extreme and outrageous and was utterly intolerable in a civilized community, (3) the defendant's conduct was the cause of the plaintiff's distress, and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Angle v. Alexander,* 328 Ark. 714, 945 S.W.2d 933 (1997); *Milam v. Bank of Cabot,* 327 Ark. 256, 937 S.W.2d 653 (1997). The Trial Court correctly concluded that the complaint in this case, while stating a claim for battery, failed to state a claim for the tort of outrage.

Each of the women who are the appellants in this case alleges the improper touching by the doctor. Presumably it occurred on

only one occasion with each of them. Nothing is alleged to suggest it occurred more than once as to any of them. The cases in which we have dealt with sexual improprieties amounting to outrage have concerned protracted sexual misconduct with or harassment of the plaintiff. More important, they have been cases in which there were allegations of the kind of devastating emotional injury described in the fourth element of the tort stated above. The allegations in the complaint now before us do not measure up.

Since recognizing the tort of outrage in *M.B.M. Co. V. Counce*, 268 Ark. 269, 569 S.W.2d 681 (1980), we have addressed outrage in a cautious manner, *Dillard Dep't Stores, Inc. v. Adams*, 315 Ark. 303, 867 S.W.2d 442 (1993), and have stated that we take a strict approach and give a narrow view to the tort of outrage. *Croom v. Younts*, 323 Ark. 95, 913 S.W.2d 283 (1996). As the majority opinion states, when analyzing an outrage claim where no physical injury or harm is evident, the courts tend to look for more in the way of extreme outrage as an assurance that the mental disturbance claim is not fictitious. In this case, there is no allegation of physical injury or harm; therefore, we must look for more in the way of emotional distress.

In reaching its conclusion, the majority has ignored aspects of prior cases in which we have considered allegations of sexual harassment and misconduct. *See Croom v. Younts, supra. See also Hale v. Ladd*, 308 Ark. 567, 826 S.W.2d 244 (1992). In the *Croom* case, we held that evidence of the tort of outrage was sufficient when a 51-year-old male began having sexual relations with his 15-year-old cousin after giving her alcohol and medication. Following the first episode, the two engaged in sexual relations on ten to fifteen additional occasions. Subsequently, the young girl made two attempts to commit suicide.

In the *Hale* case, where we held there was a clear preponderance of evidence supporting the claim of outrage, the evidence included frequent suggestive remarks and unwanted physical contact directed toward an employee by her employer over a two-month period resulting in her having a spastic colon.

In both of those cases, the conduct giving rise to the claim of outrage allegedly occurred on numerous occasions over an extended period of time. The duration of the conduct is a factor in determining whether the conduct rises to the level of outrage. *See Dillard Dep't Stores, Inc. v. Adams,* 315 Ark. 303, 867 S.W.2d 442 (1993) (noting the appellee testified that the incident lasted less than an hour as an apparent factor in the determination that the trial court erred in denying appellant's motion for a directed verdict); *see also Smith v. American Greetings Corp.,* 304 Ark. 596, 804 S.W.2d 683 (1991) (citing *Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 743 S.W.2d 380 (1988)) (stating "[t]he fact that an employer continues unjustifiable conduct over a long period of time can be an important factor weighing in favor of a finding that the employer's conduct towards an employee was outrageous"); *Sterling Drug, Inc. v. Oxford, supra,*) (noting the length of time that the conduct occurred and stating that in the *Hess* case, we based our decision in part on the fact that Hess' actions continued over a two year time span); *Hess v. Treece,* 286 Ark. 434, 693 S.W.2d 792 (1985) (noting that the conduct continued over a period of two years or more in determining that there was substantial evidence to support a finding that the tort of outrage occurred).

Although the majority opinion cites no authority in support of its conclusion that the special relationship between a physician and patient is significant in the context of determining whether the physician's conduct constitutes the tort of outrage, it is a conclusion to which I could subscribe in a proper case. It has been discussed in *obiter dicta* elsewhere and said to be a factor making the outrage standard "less stringent." *Sharrow v. Bailey,* 910 F.Supp. 187, 194 (M.D. Pa. 1995). *See also Angie M. v. Superior Court (Hiemstra),* 44 Cal. Rptr.2d 197 (Cal. App. 4 Dist. 1995). Again, the main problem with the complaint here is that it does not state facts showing the claimants suffered emotional distress of the sort that no person could be expected to endure.

Here are the relevant excerpts from the abstract of the complaint:

> The trauma of having a doctor whom each of the Plaintiffs trusted fondle their breasts in a sexually suggestive manner has caused all of the Plaintiffs to become less trusting of physicians in general.

\*\*\*

. . . [E]ach of the plaintiffs missed time from work. . . .

\*\*\*

. . .[T]he plaintiffs have sustained medical expenses in the past and may sustain future medical expense. . . .

These allegations, apparently made in an attempt to satisfy the requirement that facts be stated to show that the plaintiffs have suffered emotional distress "so severe that no reasonable person could be expected to endure it," are largely conclusory. They hardly rise to the level of those in the *Croom* case where there was an attempted suicide by the minor who had been violated or the allegation of protracted sexual harassment resulting in a specific medical condition as in the *Hale* case.

In *Turner v. Baptist Medical Center,* 275 Ark. 424, 631 S.W.2d 275 (1982), we held that an allegation of intentional infliction of emotional distress against a psychiatrist who allegedly caused false imprisonment of the plaintiff in a psychiatric treatment facility was insufficient. The majority opinion attempts to distinguish that case on the basis that it contained no allegation of violation of a trusted relationship. That misses the point of the opinion which was, "No facts were alleged that would make the *assertion of mental and emotional distress anything more than an element of damage flowing from the imprisonment and mistreatment."* 275 Ark. at 426, 631 S.W.2d at 277 (emphasis supplied). The focus there was not on the act that caused the alleged injury, but on the "assertion of mental and emotional distress" that was found to be inadequate. The same is true in this instance.

No doubt the conduct alleged in this case was an unpermitted touching or battery, but if the allegation of mental or emotional distress amounts to anything more than an indication of appropriate anger resulting from such conduct, it is not sufficient to rise to the level of the tort of outrage.

We should honor the Trial Court's dismissal of the complaint of outrage on the ground that it failed to state facts sufficient to allege that tort.

I respectfully dissent.

IMBER, J., joins in this dissent.

## SUPPLEMENTAL OPINION ON DENIAL
## OF REHEARING

April 16, 1998

*Boswell, Tucker, Brewster & Hicks,* by: *George R. Wise,* for appellants.

*Womack, Landis, Phelps, McNeill & McDaniel,* by: *Lucinda McDaniel,* for appellees.

DONALD L. CORBIN, Justice. ■ Our decision in this case reversing the order of the trial court and remanding the case for further proceedings was delivered on February 19, 1998. Appellees filed a petition for rehearing on March 6, 1998. In the petition, Appellees asserted that we erred as a matter of law in failing to apply the two-year statute of limitations applicable to

medical injuries. Our decision in this case reflects that Appellees had raised this issue below, but that the trial court had not ruled on it, thus precluding our review of the issue on appeal.

Accordingly, we deny rehearing of this case and issue this supplemental opinion for the purpose of clarifying that on remand to the trial court, Appellees are not precluded from defending against Appellants' claims by arguing that they are barred by the two-year statute of limitations applicable to medical injuries, as provided in Ark. Code Ann. § 16-114-203 (Supp. 1997).

Special Justice CHARLES A. BANKS joins in this opinion.

GLAZE, J., not participating.