SCIRICA, Circuit Judge,
dissenting in part and concurring in part.
Although the majority reaches a beneficial result, I am constrained to dissent because I find no support in either the statute or legislative history that Title III of the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101— 12213 (West 1994 & Supp.1998) (ADA), provides plaintiff a cause of action. Dr. Men-kowitz, a physician with hospital staff privileges, did not bring suit under Title I of the ADA, which generally governs discrimination in the employment relationship.
I agree with much of the majority’s review of the relevant statutes. By its express terms, Title I of the ADA addresses the terms and conditions of employment and protects individuals from workplace discrimination.[1] The definition of “qualified individual with a disability” demonstrates the exclusivity of Title I’s role in prohibiting employment discrimination: “[it] means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds, or desires- ” 42 U.S.C.A. § 12111(8). In Ford v. Schering-Plough Corp., 145 F.3d 601, 612-13 (3d Cir.1998) (citations omitted), we stated explicitly: “[tjerms and conditions of employment are covered under Title I, not Title III. ‘Title III is not intended to govern any terms or conditions of employment by providers of public accommodations or potential places of em *126 ployment; employment practices are governed by [T]itle I of this legislation.’ ”[2]
I do hot believe Title III of the ADA is available to Dr. Menkowitz. Title III “specifically addresses discrimination by owners, lessors, and operators of public accommodations,” Parker v. Metropolitan Life Ins. Co., 121 F.3d 1006, 1010 (6th Cir.1997),[3] and protects members of the public. See 42 U.S.C.A. § 12182(b)(1)(A)(iv) (“For purposes of clauses (i) through (iii) of this subpara-graph, the term ‘individual or class of individuals’ refers to the clients or customers of the covered public accommodation that enters into the contractual, licensing, or other arrangement”) (emphasis supplied).
Protecting recipients rather than providers, Title III ensures customers and clients access to the full enjoyment of goods and services fi-ee from disability based discrimination. The goods and services offered by the Pottstown Memorial Medical Center are health care and medical services. The “pub-lie” for purposes of Title III refers to those persons desiring medical care, not those seeking staff privileges. “Staff privileges” do not appear to constitute “privileges” as that term is articulated in Title III. The apparent privilege is access to medical care and health care facilities irrespective of disability, not the privilege of serving on the staff of the health care provider. See Motzkin, 938 F.Supp. at 995-96 (“While it could be argued that the terms ‘privileges’ and ‘advantages’ [in Title III] in the abstract, are general enough to encompass employment opportunities, one does not ordinarily think of jobs as being among the ‘privileges’ and ‘advantages’ offered to members of the public by places of public accommodation”).
Moreover, the list of “public accommodations” in 42 U.S.C.A. § 12818(7) suggests Title III covers only discrimination, against guests, customers, and clients of places held open for service to the general public.[4] See *127 Ford, 145 F.3d at 612-13 '(“the ‘goods, services, facilities, privileges, advantages, or accommodations’ concerning which a disabled person cannot suffer discrimination are not free standing concepts but rather all refer to the statutory term ‘public accommodation’ and thus to what these places of public accommodation provides”). As noted, the “services” and “privileges” provided by Potts-town Memorial Medical Center are medical services, not staff privileges, and thus Title III, on its face, would not apply to Dr. Men-kowitz.
When compared to other provisions of the ADA and the Rehabilitation Act prohibiting discrimination, the proscription imposed by Title III appears more narrowly drawn. Title II, addressing discrimination by public entities, broadly provides:
Subject to the provisions of this sub-chapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
42 U.S.C.A. § 12132 (West 1995). Similarly, the prohibition against discrimination mandated by the Rehabilitation Act broadly states, in part:
(a) Promulgation of rules and Regulations
No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
29 U.S.C.A. § 794(a) (West Supp.1998).
Dr. Menkowitz contends he is not an employee, but rather a physician with staff privileges. Yet, Dr. Menkowitz’ allegations of discrimination center around the terms and conditions of his employment as a staff physician at Pottstown Memorial Medical Center, which fall generally within the ambit of Title I. Title I defines “discriminate” to include, inter alia,, “participating in a contractual or other relationship that has the effect of subjecting a covered entity’s qualified applicant or employee with a disability to the discrimination prohibited by this subchapter.... ” 42 U.S.C.A. § 12112(b)(2). Title I also prohibits discrimination in the dispensation of “privileges.”
But as the majority notes, the parties have characterized Dr. Menkowitz’ relationship with the Pottstown Memorial Medical Center as “more in the nature of an independent contractor,” raising the question whether he can state a claim under Title I. In Equal Employment Opportunity Comm’n v. Zippo Mfg. Co., 713 F.2d 32 (3d Cir.1983), we articulated the appropriate standard to determine whether an individual constitutes an “em *128 ployee” for purposes of the Age Discrimination in.Employment Act, 29 U.S.C.A. §§ 621-34 (West 1985 & Supp.1998). (ADEA). ' After noting independent contractors are .not employees within the meaning, of the ADEA, we concluded “the hybrid standard that combines the common law ‘right to control’ with the ‘economic realities’ as applied in Title VII cases is the correct standard for determining employee status under ADEA.” Id. at 38.[5] By analogy, a staff physician like Dr. Menkowitz, whose duties may make him an independent contractor, may not qualify as an employee under the ADA. Irrespective, Title I more suitably addresses the context in which the complained conduct occurred.
I concur with the majority’s analysis with respect to Dr. Menkowitz’ claim under the Rehabilitation Act.

. Title I provides, in part:
(a) General Rule
No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
42 U.S.C.A. § 12112(a) (West 1995)..

. See also Parker v. Metropolitan Life Ins. Co., 121 F.3d 1006, 1014 (6th Cir.1997) ("the statutory framework of the ADA expressly limits discrimination in employment practices of Title I of the ADA"); Leonard F v. Israel Discount Bank of New York, 967 F.Supp. 802, 804 (S.D.N.Y.1997) ("Title III is not intended to govern any ter(ms and conditions of employment by providers of public accommodations. Employment practices are governed by Title I") (citation omitted); Motzkin v. Trustees of Boston Univ., 938 F.Supp. 983, 995-96 (D.Mass.1996) ("Title I ... is entitled 'Employment,' and, by its terms, it clearly applies to virtually all aspects of the employment relationship").

. Title III provides, in part:
(a) General Rule
No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.
42 U.S.C.A. § 12182(a) (West 1995). The discrimination generally prohibited is found in 42 U.S.C.A. § 12182(b):
(b) Construction
(1) General Prohibition
(A)Activities
(i) Denial of participation
It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.
(2) Specific prohibitions
(A) Discrimination
For purposes of subsection (a) of this section, discrimination includes (i) the imposition of application or eligibility criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities from fully and equally enjoying and goods, services, facilities, privileges, advantages, or accommodations unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered.
42 U.S.C.A. §§ 12182(b)(1)(A)(i), (b)(2)(A)(i). See e.g., Parker, 121 F.3d at 1010 ("Title III specifically prohibits, inter alia, the provision of unequal or separate benefits by a place of public accommodation") (citing 42 U.S.C.A. §§ 12182(b)(1)(A)(i)-(iii)).

.42 U.S.C.A. § 12181(7) includes, inter alia,
(A) an inn, hotel, motel, or other place of lodging. ...
(B) a restaurant, bar or other establishment serving food or drink;
(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
(D) an auditorium, convention center, lecture hall, or other place of public gathering;
(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
*127 (F) a Laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
(G) a terminal, depot, or other station used for specified public transportation;
(H) a museum, library, gallery, or other place of public display or collection;
(I) a park, zoo, amusement park, or other place of recreation;
(J) a nursery, elementary, secondary, undergraduate, or post graduate private school, or other place of education;
(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation
See Sharrow v. Bailey, 910 F.Supp. 187, 192 (M.D.Pa.1995) (“The professional offices of health care providers are places' of public accommodation for ADA purposes”) (citations omitted).
Recent jurisprudence reveals "public accommodation” is defined with some specificity. See Ford, 145 F.3d at 612-14 (noting it is "all of the services which the public accommodation offers, not all services which the lessor of' the public accommodations offers, which fall within the scope of Title III.... Restricting 'public accommodations’ to places is in keeping with the jurisprudence concerning Title II of the Civil Rights Act of 1964”); Parker, 121 F.3d at 1014 (finding "[t]he clear connotation of the words in § 12181(7) is that a public accommodation is a physical place” and concluding "the provision of a long-term disability plan by an employer and administered by an insurance company does not fall within the purview of Title III”).

. In reaching this conclusion, we compared the ADEA to Title VII of the.Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-2000e-17 (West 1994 & Supp.1998). The methods and manner of proof under the ADA mirror those applicable to Title VII and the ADEA. See Dykes v. DePuy, Inc., 140 F.3d 31, 39 (1st Cir.1998) ("Since, as a matter of law Dykes was an independent contractor, the district court properly granted summary judgment on Dykes’s ERISA, ADA, and state antidis-crimination claims”); Birchem v. Knights of Columbus, 116 F.3d 310, 312 (8th Cir.1997) ("Like Title VII, the ADA protects ‘employees' but not independent contractors”) (citation omitted); Alexander v. Rush N. Shore Med. Ctr., 101 F.3d 487, 492-93 (7th Cir.1996) (noting "independent contractors are not protected by Title VII” and finding physician cannot bring a Title VII alleging the hospital's revocation of his staff privileges constituted unlawful discrimination absent proof of an employment relationship, which did not exist because physician was independent contractor); Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 157 (3d Cir.1995) ("In the context of employment discrimination, the ADA, ADEA and Title VII all serve the same purpose — to. prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well”); Spirides v. Reinhardt, 613 F.2d 826, 829 (D.C.Cir.1979) (stating Title VII does not protect independent contractors).